BARNES, Judge.
 

 Willie Rhone died intestate on March 5, 1999, leaving no spouse or children. His mother and half-brother, Wyona and James Rhone, prosecuted and settled a medical malpractice wrongful death claim for $1.9 million. After the settlement and disbursement to Wyona Rhone and to James Rhone as the estate administrator, Willie Rhone's father, Willie James Bolden, filed suit in superior court against Wyona and James Rhone, James Rhone's wife Lorine Rhone, the attorneys who handled the estate matters (Daryl Von Yokely, individually and d/b/a "The Law Offices of Daryl Von Yokely", and Tracy Parsons), and the attorneys who prosecuted the wrongful death claim (Marvin Devlin, Chrisna Walker, Devlin & Robinson, P.C.). Bolden alleged that the Rhones committed fraud and the attorneys committed legal malpractice, among other things.
 
 [1]
 

 The superior court entered a consent interlocutory injunction in September 2002, then
 
 *27
 
 found James Rhone and his wife in criminal contempt for violating that injunction. James Rhone appeals the contempt citation in Case No. A04A1596. The attorney defendants moved for summary judgment, as did Bolden in separate motions for partial summary judgment against Wyona Rhone and the attorney defendants. The trial court denied the motions, finding that genuine issues of material fact remain to be determined by a jury. The attorney defendants appeal the denial of their motion in Case No. A04A1597 and Bolden appeals the denial of his motions in Case No. A04A1598. For the reasons that follow, we vacate the contempt order in Case No. A04A1596 finding James Rhone in criminal contempt, and remand for further proceedings. We also reverse the denial of summary judgment to the attorney defendants in Case No. A04A1597, and affirm the denial of summary judgment to Bolden in Case No. A04A1598.
 

 1. We must first address whether we have jurisdiction to consider the summary judgment orders. The trial court entered its contempt order against James Rhone and his wife on December 17, 2003. On
 

 **713
 

 January 13, 2004, the Rhones filed a timely notice directly appealing that order. On January 14, 2004, the trial court entered an order denying several pending motions by Bolden. On January 26, 2004, Bolden filed a notice of cross-appeal, seeking review of the trial court's January 14, 2004 order, as well as a March 3, 2003 order denying his first motion for partial summary judgment against Wyona Rhone.
 

 On February 9, 2004, the trial court denied the attorney defendants' motions for summary judgment and granted a certificate of immediate review. This court subsequently granted the attorney defendants' application for a discretionary appeal, considering that the Rhones' direct appeal of the contempt citation was pending and that Bolden had filed a cross-appeal related to that direct appeal.
 

 While the Rhones' contempt citation is directly appealable, the trial court entered its January 14, 2004 order denying several of Bolden's motions after the Rhones filed their notice of appeal on the contempt order. We must therefore determine whether we may consider this portion of Bolden's cross-appeal.
 

 OCGA § 5-6-38(a) provides that an "appellee may institute cross appeal by filing notice thereof within 15 days from service of the notice of appeal by the appellant," and further provides that the appellee "may present for adjudication on the cross appeal all errors or rulings adversely affecting him." The trial court's January 14, 2004 order denying Bolden's motions for summary judgment against all of the defendants preceded Bolden's cross-appeal, and therefore we may properly consider Bolden's appeal of that order in this opinion.
 

 Case No. A04A1596
 

 2. James and Lorine Rhone argue that the trial court erred in holding them in criminal contempt, ordering them to pay $48,244.04 into the court registry, and ordering them to pay $1,000 to Bolden for attorney fees. Bolden responds that the issue is moot because the Rhones have already complied with the terms of the contempt order. We deny Bolden's motion to dismiss the appeal and will consider it on the merits.
 

 The trial court entered a consent interlocutory injunction in September 2002, and Bolden subsequently moved for a contempt citation against the Rhones because they refinanced the mortgage on property bought with estate assets in violation of the trial court's injunction, and failed to pay the mortgage and insurance on the property. After a hearing, the trial court found James Rhone and his wife in criminal contempt for violating that injunction, holding that they might purge themselves of the contempt by paying $48,244.04 into the court registry and $1,000 to Bolden for attorney fees.
 

 **714
 

 Acts of contempt are neither civil nor criminal. They are either direct, meaning they are committed within the sensory perception of the judge, or they are indirect, meaning they occur outside the sensory perception of the judge. Once an act has been determined to constitute contempt of court, the action the court takes to deal with the contempt determines whether the contempt is deemed "criminal" contempt
 
 [
 
 608 S.E.2d 28
 
 ]
 
 or "civil" contempt, a distinction historically made by both appellate courts in this state.
 

 (Citations omitted.)
 
 Grantham v. Universal Tax Systems,
 

 217 Ga.App. 676
 
 , 677(2),
 
 458 S.E.2d 870
 
 (1995). The distinction between criminal and civil contempt is that criminal contempt imposes unconditional punishment for prior contempt, "to preserve the court's authority and to punish disobedience of its orders. [Cit.] Civil contempt, on the other hand, is conditional punishment which coerces the contemnor to comply with the court order. [Cit.]"
 
 Hopkins v. Hopkins,
 

 244 Ga. 66
 
 , 67(1),
 
 257 S.E.2d 900
 
 (1979). "If the contemnor is imprisoned only until he performs a specified act, the purpose is remedial and hence the contempt is civil. [Cit.]"
 
 Ensley v. Ensley,
 

 239 Ga. 860
 
 , 862,
 
 238 S.E.2d 920
 
 (1977).
 

 At the contempt motion hearing, the Rhones told the court that the parties had earlier agreed on some issues. The Rhones admitted they had refinanced the house in violation of the court's order, and were prepared to pay a certain amount of money, representing equity from the property, into the court registry. Also, they had already deeded the property to the estate. The parties had not agreed on whether the Rhones owed Bolden attorney fees or on the amount of such fees, and the Rhones did not agree to a citation of criminal contempt. The trial court ruled that the Rhones were in contempt but that they could purge themselves by transferring the property deed, as was already done, paying the equity funds into the court registry, and paying $1,000 to Bolden for attorney fees.
 

 While Bolden argues in his responsive appellate brief that the Rhones acquiesced to the trial court's finding of criminal contempt, that assertion is not supported by the record. A fair reading of the hearing shows that the Rhones never agreed to the finding of criminal contempt. Further, the Rhones moved the trial court to reconsider its contempt order, contending that "a finding of criminal contempt is not authorized, and the terms of the Order are inconsistent with a finding of criminal contempt."
 

 While the trial court's written order found the Rhones in criminal contempt, the substance of the order was a finding of civil contempt. The Rhones were not punished for their past deeds, but were held in contempt only until they performed certain remedial acts. See
 
 Ensley
 

 **715
 

 v. Ensley,
 
 supra,
 
 239 Ga. at 862
 
 ,
 
 238 S.E.2d 920
 
 . We are not bound by the nomenclature assigned by the trial court, but consider the substance of the order, and the trial court erred in identifying the contempt as criminal instead of civil.
 

 We find no error in that portion of the order directing the Rhones to deed the property to the administratrix and pay funds into the court registry. The Rhones admitted and stipulated at the contempt hearing that James Rhone had refinanced the house, and acquiesced to deeding the property to the administratrix of Willie Rhone's estate and to paying the money into the court registry. Thus, they cannot now dispute that portion of the order in this court. "An admission in open court is an admission in judicio; a judicial admission is conclusive."
 
 Lamb v. Decatur Fed. Sav. & Loan Assn.,
 

 201 Ga.App. 583
 
 , 588,
 
 411 S.E.2d 527
 
 (1991). We therefore affirm that portion of the trial court's order directing the Rhones to purge themselves of contempt by deeding the house and paying money into the court registry.
 

 As to the attorney fee award,
 

 [a]ttorney fees may be awarded in cases of civil contempt but only if some express authority or power exists. No authority exists to award attorney fees merely because the action is for contempt. In this case, the trial court failed to identify any express authority for the fees. Accordingly, we vacate [the last sentence] of the trial court's order and remand this case for further proceedings. The trial court must articulate express legal authority for the [$1,000] in costs and attorney fees imposed in the appealed order or relieve [the Rhones] of the obligation.
 

 (Citations, punctuation and footnote omitted.)
 
 Norred v. Moore,
 

 263 Ga.App. 516
 
 , 518(2)(a),
 
 588 S.E.2d 301
 
 (2003).
 

 *29
 

 Case No. A04A1597
 

 3. The attorney defendants argue that the trial court erred in denying their motion for summary judgment on Bolden's claims that they committed legal malpractice and fraud, breached a fiduciary duty to Bolden, owed punitive damages, should disgorge their attorney fees from the estate's share of the wrongful death settlement, and should return money had and received.
 

 On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as
 

 **716
 

 a matter of law.
 
 Preferred Real Estate Equities v. Housing Systems,
 

 248 Ga.App. 745
 
 ,
 
 548 S.E.2d 646
 
 (2001). Further, when ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the party opposing the motion.
 
 Moore v. Goldome Credit Corp.,
 

 187 Ga.App. 594
 
 , 595-596,
 
 370 S.E.2d 843
 
 (1988). On motions for summary judgment, however, courts cannot resolve the facts or reconcile the issues.
 
 Fletcher v. Amax, Inc.,
 

 160 Ga.App. 692
 
 , 695,
 
 288 S.E.2d 49
 
 (1981). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.
 
 Desai v. Silver Dollar City,
 

 229 Ga.App. 160
 
 , 163(1),
 
 493 S.E.2d 540
 
 (1997).
 

 4. Regarding the legal malpractice claim, the attorneys contend that (a) Bolden failed as a matter of law to demonstrate the existence of an attorney-client relationship, and (b) Bolden was not a third-party beneficiary of the attorneys' representation of Wyona Rhone to whom the attorneys owed a duty.
 

 (a) Generally, a plaintiff must demonstrate the existence of an attorney-client relationship before he may recover in a legal malpractice suit. "This is essential in establishing the element of duty that is necessary to every lawsuit based upon a theory of negligence." (Citation and punctuation omitted.)
 
 Guillebeau v. Jenkins,
 

 182 Ga.App. 225
 
 , 229(1),
 
 355 S.E.2d 453
 
 (1987);
 
 Richard v. David,
 

 212 Ga.App. 661
 
 -662(1),
 
 442 S.E.2d 459
 
 (1994).
 

 "The basic question in regard to the formation of the attorney-client relationship is whether the evidence sufficiently established that advice or assistance of the attorney is both sought and received in matters pertinent to his profession." (Citation and punctuation omitted.)
 
 Legacy Homes v. Cole,
 

 205 Ga.App. 34
 
 , 35,
 
 421 S.E.2d 127
 
 (1992). The record reveals that Bolden never sought legal advice from any of the attorney defendants, and that none of them offered any legal advice to him. In fact, Bolden testified in his deposition that he did not know any of the lawyers personally and had never spoken to them or hired them. "Thus, the evidence demanded a finding that no attorney-client relationship existed, in the classic sense of the term. [Cit.]" (Punctuation omitted.)
 
 Horn v. Smith & Meroney, P.C.,
 

 194 Ga.App. 298
 
 , 299(1),
 
 390 S.E.2d 272
 
 (1990). Accordingly, the trial court erred in denying the attorney defendants' motion for summary judgment on Bolden's legal malpractice claim.
 

 (b) While Bolden also argues that he was an intended third-party beneficiary to the Rhones' contracts for legal services from the attorney defendants, we do not find that argument persuasive. In some situations, an attorney may owe a duty to a third party. For example, a lawyer representing the guardian ad litem of a minor owes
 

 **717
 

 a duty to the minor also, who is the real party with the legal interest warranting representation and the intended beneficiary of the relationship between her guardian and the guardian's attorney.
 
 Toporek v. Zepp,
 

 224 Ga.App. 26
 
 , 28(2),
 
 479 S.E.2d 759
 
 (1996). Additionally, a real property buyer who relied on an attorney's title certification of the property purchased has a cause of action against the attorney if the seller had no interest in the property.
 
 Kirby v. Chester,
 

 174 Ga.App. 881
 
 , 884(2),
 
 331 S.E.2d 915
 
 (1985). Finally, "[i]n a wrongful death case, the surviving spouse acts as the children's
 
 *30
 
 representative and owes them the duty to act prudently in asserting, prosecuting and settling the claim and to act in the utmost good faith."
 
 Home Ins. Co. v. Wynn,
 

 229 Ga.App. 220
 
 , 222(1),
 
 493 S.E.2d 622
 
 (1997).
 

 Neither of these situations is analogous to the facts before us. Bolden's interests in the wrongful death suit and probate court proceedings as a surviving parent (rather than a surviving spouse or child) are antagonistic to Wyona Rhone's interests, and thus the attorneys representing Wyona Rhone had no fiduciary duty to Bolden that would support a third-party beneficiary claim. See
 
 Tower Financial Svcs. v. Mapp,
 

 198 Ga.App. 563
 
 , 564(1),
 
 402 S.E.2d 286
 
 (1991);
 
 Horn v. Smith & Meroney, P.C.,
 

 supra,
 

 194 Ga.App. at 299
 
 ,
 
 390 S.E.2d 272
 
 .
 

 The wrongful death statute prescribes the solution to this problem, providing that both parents have a right to share in the recovery for the wrongful death of a child who is not survived by spouse or children. OCGA § 19-7-1(c)(2). It also provides that if one parent refuses to proceed or cannot be located, the other parent has the right to contract for representation on behalf of both parents. OCGA § 19-7-1(c)(2). There is no indication, however, that Wyona Rhone contracted for the attorneys to represent Bolden's interest. While ordinarily both parents share equally in the wrongful death judgment, OCGA § 19-7-1(c)(2)(C), one parent may move to apportion the award, and the judge ruling on the motion considers each parent's relationship with the deceased child. OCGA § 19-7-1(c)(6).
 

 The duty lies with the parent, however, not with the lawyer representing the parent. If that lawyer does not protect the interests of his client against the other parent, who then sues the client, then the client may have a cause of action against her attorney for failing to protect her interests. That cause of action does not translate into a direct right by the other parent against the prosecuting parent's lawyer, who owed no duty to Bolden and whose interests were antagonistic to his client's interests. A lawyer cannot pursue any interest or take any act adverse to his client's interests or incompatible with applying his best skill, zeal, and diligence in representing that client.
 
 Tunsil v. Jackson,
 

 248 Ga.App. 496
 
 , 499(2),
 
 546 S.E.2d 875
 
 (2001);
 
 Nelson & Hill, P.A. v. Wood,
 

 245 Ga.App. 60
 
 , 67(3),
 
 537 S.E.2d 670
 
 (2000).
 

 **718
 

 (c) The analysis differs for the attorneys representing the estate administrator, because the administrator's interests are not antagonistic to Bolden's interests as an heir. In fact, the administrator's job is to marshal and manage the estate assets, and then distribute them properly to the heirs. But the existence of a duty by the administrator to the heirs does not translate into a duty by the administrator's lawyers to the heirs. While the estate may or may not ultimately pay the lawyer's fee, the lawyer's client is the administrator, not the estate. As discussed in Division 4(a), supra, generally an attorney-client relationship must exist "before a plaintiff may recover in a legal malpractice suit. This is essential in establishing the element of duty that is necessary to every lawsuit based upon a theory of negligence." (Citation and punctuation omitted.)
 
 Moore v. Harris,
 

 188 Ga.App. 251
 
 , 252,
 
 372 S.E.2d 654
 
 (1988).
 

 Neither are the heirs of an estate third-party beneficiaries of the attorney-client relationship between an attorney hired by an administrator. While we have uncovered no Georgia cases directly on point, other jurisdictions have considered whether the heirs of an estate may bring a legal malpractice claim against a lawyer hired by the estate representative. For example, the Maryland Court of Special Appeals determined that the personal representative was permitted
 

 to seek the advice of an attorney in performing his or her duties rather than to provide representation to creditors and beneficiaries of the estate. Thus, where a personal representative hires an attorney to assist him or her in handling the estate, as in the instant case, the direct purpose in hiring the attorney is not to benefit the beneficiaries....[A]ny benefit to the beneficiaries from the personal representative's attorney is merely incidental. Such incidental benefit is not sufficient to impose a duty upon an attorney. In cases such as
 

 *31
 

 the instant case, the attorney owes a duty solely to his or her client, the personal representative.
 

 (Citations omitted.)
 
 Ferguson v. Cramer,
 

 349 Md. 760
 
 , 770,
 
 709 A.2d 1279
 
 (1998).
 

 The California Court of Appeals has also concluded that estate heirs have no cause of action against the attorney hired by the estate representative. That court held:
 

 Particularly in the case of services rendered for the fiduciary of a decedent's estate, we would apprehend great danger in finding stray duties in favor of beneficiaries. Typically in estate administration conflicting interests vie for recognition. The very purpose of the fiduciary is to serve the
 

 **719
 

 interests of the estate, not to promote the objectives of one group of legatees over the interests of conflicting claimants. The fiduciary's attorney, as his legal adviser, is faced with the same task of disposition of conflicts. It is of course the purpose and obligation of both the fiduciary and his attorney to serve the estate. In such capacity they are obligated to communicate with, and to arbitrate conflicting claims among, those interested in the estate. While the fiduciary in the performance of this service may be exposed to the potential of malpractice (and hence is subject to surcharge when his administration is completed), the attorney by definition represents only one party: the fiduciary. It would be very dangerous to conclude that the attorney, through performance of his service to the administrator and by way of communication to estate beneficiaries, subjects himself to claims of negligence from the beneficiaries. The beneficiaries are entitled to evenhanded and fair administration by the fiduciary. They are not owed a duty directly by the fiduciary's attorney.
 

 (Citations omitted.)
 
 Goldberg v. Frye,
 

 217 Cal.App.3d 1258
 
 , 1269(5)(b),
 
 266 Cal.Rptr. 483
 
 (1990).
 

 Therefore, the trial court erred in denying summary judgment to the attorney defendants on Bolden's legal malpractice claim.
 

 5. The defendant attorneys contend that the trial court erred in denying their motion for summary judgment on Bolden's fraud claim. The five elements of fraud and deceit are: (1) false representation made by defendant; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting in reliance by plaintiff; (4) justifiable reliance by plaintiff; and (5) damage to plaintiff.
 
 Keller v. Henderson,
 

 248 Ga.App. 526
 
 , 527(2),
 
 545 S.E.2d 705
 
 (2001). Bolden has failed to produce any evidence showing that the defendant attorneys made false representations to him or that he relied on their false representations. As discussed previously, Bolden testified that he had never even met the attorney defendants, and did not know who they were.
 

 The attorneys further contend that Bolden has not established the existence of a genuine issue of material fact regarding his claim that they fraudulently concealed information from him. While concealment of material facts may amount to fraud if the other party could not by exercising ordinary care discover the facts concealed, a person has no obligation to disclose information that is equally available to both parties.
 
 Southern Intermodal Logistics v. Smith & Kelly Co.,
 

 190 Ga.App. 584
 
 , 585-586(1),
 
 379 S.E.2d 612
 
 (1989). It is clear from the record that Bolden knew that his son had died. He attended the funeral. He had a duty to investigate, or hire his own
 

 **720
 

 attorney to investigate, the facts surrounding his son's death, which he did not do. The trial court erred in denying the attorney defendants' motion for summary judgment on Bolden's fraud claim.
 

 6. The defendant attorneys argue that the trial court erred in denying summary judgment on Bolden's claim that they breached a fiduciary duty to him. They contend that, because they had no attorney-client relationship with Bolden, they owed him no duty, citing
 
 Hill Aircraft & Leasing Corp. v. Tyler,
 

 161 Ga.App. 267
 
 , 271(4),
 
 291 S.E.2d 6
 
 (1982). The attorney defendants further argue that they owed Bolden no duty as a beneficiary of Willie Rhone's estate. We have found no cases holding that the attorney of a fiduciary owes a fiduciary duty to the beneficiary of an estate. See
 
 Bowen v. Hunter, Maclean etc.,
 

 241 Ga.App. 204
 
 , 206(2),
 
 525 S.E.2d 744
 
 (1999) (physical precedent
 
 *32
 
 only). Further, "the party asserting the existence" of a fiduciary or confidential relationship bears the burden of establishing its existence.
 
 Crawford v. Crawford,
 

 134 Ga. 114
 
 , 119,
 
 67 S.E. 673
 
 (1910). For the reasons discussed in Division 4, supra, we conclude that Bolden failed to establish that the attorney defendants owed a fiduciary duty to Bolden, whose interests were antagonistic to their clients' interests. The trial court erred in denying their motion for summary judgment on Bolden's fraud claim.
 

 7. The attorney defendants contend that the trial court erred in denying their motion for summary judgment on Bolden's claims for disgorgement of attorney fees and money had and received, noting first that the State Court of Fulton County approved the settlement agreement and disbursement in the medical malpractice case. They also argue that Bolden failed to establish a genuine issue of material fact regarding his claim for money had and received. "Under the common law doctrine of money had and received, recovery is authorized against one who holds unspecified sums of money of another which he ought in equity and good conscience to refund."
 
 Taylor v. Powertel,
 

 250 Ga.App. 356
 
 , 359(2),
 
 551 S.E.2d 765
 
 (2001). As discussed earlier, the attorney defendants owed no fiduciary duty to Bolden, who was not their client. Bolden may have a claim against the Rhones for money had and received, but he has failed to show that the attorney defendants held his money.
 

 Bolden seeks disgorgement of the attorney fees from the estate portion of the wrongful death settlement because the probate court did not approve the fees. The attorney defendants argue that such approval was not required because the settlement did not involve proceeds to a minor, an incompetent person, a ward of the state, or a person represented by a guardian. The probate court may enforce a ward's right to have settlement proceeds used to provide for his support, care, education, and well-being by means of a judicial inquiry and by the entry of appropriate orders to correct any abuse.
 

 **721
 

 Gnann v. Woodall,
 

 270 Ga. 516
 
 , 517,
 
 511 S.E.2d 188
 
 (1999). In this case, however, the settlement proceeds were not being disbursed to an incompetent individual, but to Wyona Rhone as a surviving parent and to James Rhone as the estate administrator. Therefore, probate court approval of the attorney fees was not required, and the trial court erred in denying the attorney defendants' motion for summary judgment on his claims for disgorgement of attorney fees and for money had and received.
 

 8. The attorney defendants assert that the trial court erred in failing to grant summary judgment to them on Bolden's claim for punitive damages, because that claim is dependent on his invalid claims against them for legal malpractice, fraud, breach of fiduciary duty, and money had an received. The party seeking punitive damages must first be entitled to compensatory damages.
 
 Nelson & Hill, P.A. v. Wood,
 

 245 Ga.App. 60
 
 , 68(3),
 
 537 S.E.2d 670
 
 (2000). Because we have concluded that the trial court erred in denying summary judgment to the attorney defendants on all of Bolden's claims seeking compensatory damages, we must therefore also conclude that the trial court erred in denying summary judgment on Bolden's punitive damages claim.
 

 Case No. A04A1598
 

 Bolden appeals the trial court's order denying his motions for partial summary judgment and his motion in limine, enumerating eight errors. Bolden first argues that the trial court erred in denying his motion for partial summary judgment on Wyona Rhone's defenses of laches, advice of counsel, and estoppel in his claim against her for breach of fiduciary duties. He also contends that the trial court erred in denying him summary judgment on that claim.
 

 9. First, Bolden contends the trial court erred in denying his motion for summary judgment on Wyona Rhone's equitable defense of laches in his claim against her for breach of fiduciary duty. Under the doctrine of laches, a party is barred from receiving equitable relief when he has unreasonably delayed in seeking that relief and such delay is prejudicial to the person from whom the relief is sought. OCGA § 23-1-25
 
 *33
 
 provides that "[e]quity gives no relief to one whose long delay renders the ascertainment of the truth difficult, even when no legal limitation bars the right."
 

 Bolden argues that his claim against Wyona Rhone for his share of the wrongful death proceeds is "statutory in nature," based on OCGA § 19-7-1(c)(2)(C), and that therefore the equitable defense of laches does not apply. He seeks an equitable remedy, however: to impose a constructive trust on Wyona Rhone's annuity purchased with the proceeds of the wrongful death settlement. Wyona Rhone
 

 **722
 

 replies that Bolden failed to respond to a letter from defendant Yokely notifying him of a potential wrongful death suit in August 1999, and told Yokely over the phone that the estate administration and lawsuit had nothing to do with him. (Bolden denied having received the letter or phone call.) Bolden's failure to respond to the initiatives of the Rhones' attorney constituted laches, Wyona Rhone argues, because, had he stepped forward, Wyona Rhone could have petitioned the court overseeing the malpractice case to apportion the settlement proceeds. Instead, by the time Bolden finally stepped forward, that court held that the petition for apportionment was untimely. Bolden denies having received any phone calls or letters regarding the medical malpractice case or estate administration. Consequently, material questions of fact exist for a jury to determine whether laches constitutes a defense to Bolden's claim for a constructive trust on Wyona Rhone's annuity, and therefore the trial court did not err in denying Bolden's motion for partial summary judgment.
 
 Davidson Mineral Properties v. Gifford-Hill & Co.,
 

 235 Ga. 176
 
 , 178,
 
 219 S.E.2d 133
 
 (1975).
 

 10. Next, Bolden contends the trial court erred in denying his motion for summary judgment on Wyona Rhone's defense of advice of counsel in his claim against her for breach of fiduciary duty. OCGA § 15-19-17 provides that "[c]lients shall not be relieved from their liability for damages and penalties imposed by law on the ground that they acted under the advice of their counsel but are entitled to redress from their counsel for unskillful advice."
 

 The advice of counsel
 

 is a circumstance tending to show, bona fide, the absence of malice, and the existence of probable cause; and as such circumstance it should go to the jury to be weighed by them with the other facts of the case. It certainly ought to be admitted for these reasons, as well as to mitigate the damages; but the court, we think, should be particular to say to the jury that, of itself, this advice of counsel cannot be a complete protection to the defendant, but goes before them as a circumstance in the case, which when weighed with other circumstances, may, according to the facts of each case, relieve the defendant, or make the damages nominal, or mitigate them more or less.
 

 Fox v. J.W. Davis & Co.,
 

 55 Ga. 298
 
 , 302-303 (1875).
 

 We have also held that, in determining whether a defendant wilfully violated the terms of Georgia's Security Act, "a claim by the violator that he or she acted in reliance on the advice of counsel is a factor which may be considered along with all other circumstances
 

 **723
 

 relevant to the issue of whether the conduct was a knowing and intentional violation."
 
 Garvin v. Secretary of State,
 

 266 Ga.App. 66
 
 , 73(2),
 
 596 S.E.2d 166
 
 (2004). In other words, while Wyona Rhone cannot assert as a complete defense to Bolden's breach of fiduciary duty claim that she relied on her lawyer's advice, she may present evidence in that regard to establish her state of mind. See
 
 Woods v. Woods,
 

 212 Ga. 70
 
 (2),
 
 90 S.E.2d 412
 
 (1955);
 
 Stewart v. Mulligan,
 

 11 Ga.App. 660
 
 , 661,
 
 75 S.E. 991
 
 (1912). The trial court did not err in denying Bolden's motion for partial summary judgment on Wyona Rhone's defense of advice of counsel.
 

 11. Bolden contends the trial court erred in denying his motion for partial summary judgment on Wyona Rhone's defense of estoppel in his claim against her for breach of fiduciary duty. Wyona Rhone replies that she does not contend that the doctrine of estoppel applies in this case, and a review of her answer confirms that Wyona Rhone did not raise the defense of estoppel. Therefore,
 
 *34
 
 this portion of Bolden's motion is moot and the trial court did not err in denying summary judgment on this ground.
 

 12. Bolden contends the trial court erred in denying his motion for summary judgment on his claim against Wyona Rhone for breach of fiduciary duty. He argues that, as the decedent's mother, Wyona Rhone had the right to pursue the wrongful death action, but that she proceeded on both her behalf and on Bolden's behalf in prosecuting the claim, thus establishing her fiduciary duty. She then breached that duty by failing to divide the settlement with Bolden or petition for apportionment of the proceeds. In response, Wyona Rhone argues that she is a stroke victim who is unable to communicate with anyone other than her son. All of the actions in the wrongful death suit were undertaken by her son, James Rhone, or her attorneys, ostensibly on her behalf but without input from her, she asserts.
 

 Wyona Rhone further argues that a factual dispute exists about whether any alleged breach of fiduciary duty proximately caused damage to Bolden, because if the settlement had been apportioned properly, Bolden would not have been entitled to any proceeds. Wyona Rhone presented evidence that Bolden had no meaningful relationship with Willie Rhone and vehemently denied paternity, which was eventually established in an Alabama court through paternity testing. These disputed factors are relevant to Bolden's entitlement to the proceeds of his son's wrongful death claim.
 
 Richardson v. Barber,
 

 241 Ga.App. 254
 
 , 258(4),
 
 527 S.E.2d 8
 
 (1999). Wyona Rhone also contends that Bolden's failure to provide reasonable financial support when Willie Rhone was young foreclosed his entitlement to any settlement proceeds. The Supreme Court of Georgia has held that,
 

 **724
 

 in order for a biological father to participate in a recovery based upon the wrongful death of his child born out of wedlock, he must have provided, during the lifetime of the child, such financial support as shall have been reasonable under the facts and circumstances of the case, bearing in mind the needs of the child and the ability of the father to pay.
 

 Sapp v. Solomon,
 

 252 Ga. 532
 
 -533(2),
 
 314 S.E.2d 878
 
 (1984). These factual issues remain for a jury's consideration, and the trial court did not err in denying Bolden's motion for summary judgment on his claim against Wyona Rhone for breach of fiduciary duty.
 

 13. Bolden contends that the trial court erred in denying his motion in limine to exclude evidence that he was a "poor parent," arguing that he is entitled to half of Wyona Rhone's portion of the settlement regardless of what kind of parent he was. The wrongful death statute provides that both parents have a right to share in the recovery for the wrongful death of a child who is not survived by spouse or children. OCGA § 19-7-1(c)(2). It also provides that if one parent refuses to proceed or cannot be located, the other parent has the right to contract for representation on behalf of both parents. OCGA § 19-7-1(c)(2)(C). While ordinarily both parents share equally in the wrongful death judgment, one parent may move to apportion the award, and the judge ruling on the motion considers each parent's relationship with the deceased child. OCGA § 19-7-1(c)(6). Finally, the statute provides that "[i]f, after two years from the date of any recovery, the share of an absent parent has not been paid to the absent parent, the other parent can petition the court for the funds, and the recovery, under appropriate court order, shall be paid over to the parent who initiated the recovery." OCGA § 19-7-1(c)(2)(C).
 

 In this case, Wyona Rhone moved to apportion the funds in the court in which the wrongful death suit was filed. The trial court in that case denied the motion, finding that it was filed too late because the case had already been dismissed with prejudice and because the statute provides that such a motion must be brought before trial. This order was not appealed, and is res judicata.
 

 While the action before us is not for the apportionment of the proceeds, it is an action for damages against Wyona Rhone for Bolden's share of the wrongful death settlement proceeds. How much money, if any, Bolden would have been entitled to receive from those proceeds is a factual issue in the case, and a jury could determine that Bolden
 
 *35
 
 was not entitled to a full half-share of the wrongful death proceeds allocated to Willie Rhone's parents. His degree of participation and involvement in Willie Rhone's life is relevant to determining the amount of damages he is entitled to receive, if any. "Questions
 

 **725
 

 of relevancy of evidence, which includes the issue of materiality, are for the trial court, and in the absence of an abuse of judicial discretion, this court will not interfere. [Cit.]" (Punctuation omitted.)
 
 Metropolitan Property & Liability Ins. Co. v. Shepherd,
 

 166 Ga.App. 300
 
 , 301(1),
 
 304 S.E.2d 74
 
 (1983). The trial court did not abuse its discretion in denying Bolden's motion in limine.
 

 14. Bolden's remaining enumerations of error protest the trial court's denial of his motions for partial summary judgment against the attorney defendants, which are moot in light of our disposition of the attorney defendants' appeal.
 

 Judgment vacated and remanded for further proceeding in Case No. A04A1596. Judgment reversed in Case No. A04A1597. Judgment affirmed in part and reversed in part in Case No. A04A1598.
 

 BLACKBURN, P.J., and MIKELL, J., concur.
 

 Bolden also petitioned the probate court for half of the settlement amount, claiming to be entitled to share the wrongful death proceeds as the decedent's father. The probate court subsequently removed James Rhone as the administrator of Willie Rhone's estate for failing to post a bond, determined that Bolden was entitled to half of the estate proceeds, awarded the estate a judgment against James Rhone personally for $348,168.94, and awarded Bolden prejudgment interest plus attorney fees and expenses against James Rhone. The probate court order is not before us in this appeal.