### A08A1003. JEGADEESH et al. v. RYAN et al.
(667 SE2d 105)

ELLINGTON, Judge.

Narasimhan and Nageswari Jegadeesh appeal from the Fulton County trial court's grant of Dennis and Betty Ryan's motion for judgment notwithstanding a mistrial on the Jegadeeshes' fraud claims arising from their purchase of the Ryans' house. The Jegadeeshes assert inter alia that the trial court erred when it granted the Ryans' motions for directed verdict and for judgment notwithstanding the mistrial. We find no error and affirm.

> In considering the sufficiency of the evidence to warrant the grant of a motion for judgment notwithstanding a mistrial, the same test obtains as that for a directed verdict[: i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed.

(Citation and punctuation omitted.) *Long v. Walls*, 226 Ga. 737, 740-741 (177 SE2d 373) (1970).

So viewed, the record shows that the Ryans moved into a custom-built house in October 1994. They received a warranty for foundation waterproofing running ten years from their closing date. By or soon after the time the Ryans moved in, their builder sealed a tunnel between the main house and the pool house. When the Ryans complained in late 1994 and early 1995 about water coming into the basement, the builder also made repairs to the pool deck. The Ryans

last saw puddles of water in the basement on July 1, 1995. They complained soon afterward to the builder that the leakage was serious enough to "prevent [them] from ever being able to finish off the basement." Although it is not clear from the record whether the builder made any further repairs, the Ryans regularly resurfaced and caulked the pool deck until they moved out of the house in 2001.

The Ryans were also notified in 1995 that their septic system, the lines of which had been installed under concrete, did not have a permit. They complained to their builder on this subject as well, expressing concern that they would not be able to sell the house without an approved system. A Fulton County inspector testified that a septic tank inspection and permit was a prerequisite to her office's issuance of a certificate of occupancy. Although the Ryans never located a permit, Fulton County later issued them a certificate of occupancy for the house.

In August 2001, the Ryans moved to their vacation home in Florida, after which time they no longer maintained the pool deck at the Atlanta house. The Ryans remodeled the house in 2001 and 2002, patched drywall cuts made by the builder in 1995 at that time, and put the house on the market in early 2003. On June 9, 2003, after lowering the sales price on the advice of a new broker, the Ryans completed and signed a seller's property disclosure statement on the property. Under the heading "Drainage, Flooding and Moisture," the statement included the following question (number 6 (a)): "Are you aware of any water leakage, accumulation, or dampness within the basement, crawl space or other parts of the main dwelling at or below grade?" The Ryans responded to this question by checking the "Don't Know" column. The Ryans' other responses on the disclosure statement indicated that they were not "aware of any repair being made to control any water or dampness problems" (number 6 (b)); that they were not "aware of any instances where necessary permits and/or approvals were not obtained" (number 5 (f)); that the property had not been "the subject of litigation or claim, including, but not limited to, defective building problems[ or] construction defects" (number 11 (b)); and that they were not "aware of any award or payment of money in lieu of repairs" concerning such defective building products (number 11 (c)).

The Jegadeeshes first made an offer on the house in November 2003, with negotiations stretching over eight months and involving a total of ten offers. The parties signed a purchase agreement on June 7, 2004, setting a price of $1.45 million. On July 5, the Jegadeeshes' home inspector examined the property and found water damage and high moisture readings at a pool retaining wall, with the pool decking showing substantial cracking that would "allow some moisture over time into the patio support structure."

After negotiations over necessary repairs, including these forms of water damage, the parties closed on the house on July 12, 2004. Soon after moving in, however, the Jegadeeshes discovered water damage on interior sub-flooring above the basement and leaks along the tunnel between the main house and the pool house. The Jegadeeshes announced their intention to rescind the contract on August 17, 2004, and brought this fraud action the following October, seeking rescission, punitive damages, and attorney fees.

At the close of the Jegadeeshes' case at trial, the Ryans moved for a directed verdict as to each element of the fraud claim. The trial court granted the motion except as to the claims arising from the Ryans' responses to question 6 (a) of the disclosure statement. In the course of its deliberations on this remaining claim, the jury indicated that it was deadlocked seven to five in favor of the Jegadeeshes. After the trial court indicated its inclination to declare a mistrial, the Ryans renewed their motion for directed verdict on the ground that the Jegadeeshes could not have justifiably relied on the Ryans' response to question 6 (a). The trial court postponed a ruling on the motion in light of its intention to declare a mistrial and asked the parties for briefs on the issue. The trial court then brought the jury back and declared a mistrial. After the Jegadeeshes moved for a new trial, the trial court noted that the parties were free to file any appropriate motions and that the Ryans were authorized to renew their motion for directed verdict as one for verdict notwithstanding the mistrial. Neither party objected to any of these proceedings.

The Ryans timely filed a written motion for judgment notwithstanding the mistrial on the issues of fraud, punitive damages, and attorney fees. The Jegadeeshes likewise renewed their motion for new trial. After notice and a hearing, the trial court granted the Ryans' motion.

1. As a preliminary matter, we note the Ryans' testimony that the certificate of occupancy tendered at trial was the original document from their own files. This was sufficient to authenticate the certificate. See *Salinas v. Skelton*, 249 Ga. App. 217, 220 (1) (547 SE2d 289) (2001) ("[A] document can be authenticated by circumstantial evidence. One such circumstance, when coupled with other evidence, is a party's production of the document during discovery.") (footnote omitted).

2. The Jegadeeshes argue that the Ryans' failure to disclose the house's history of water problems was fraudulent. We disagree.

"The five elements of fraud and deceit are: (1) false representation made by defendant; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting in reliance by plaintiff; (4) justifiable reliance by plaintiff; and (5) damage to plaintiff." (Citation omitted.)

344

*Rhone v. Bolden*, 270 Ga. App. 712, 719 (5) (608 SE2d 22) (2004). More specifically:

> If a seller of real estate knows of a defect in the property of which the purchaser is ignorant, and which would likely influence the purchase decision, the seller has a duty to disclose his knowledge to the purchaser. Where a buyer seeks to recover from a seller who has passively concealed a defect, the buyer must prove that the vendor's concealment of the defect was an act of fraud and deceit, including evidence that the defect could not have been discovered by the buyer by the exercise of due diligence and that the seller or agent was aware of the problems and did not disclose them.

(Footnotes omitted.) *Salinas*, 249 Ga. App. at 221-222 (2). Cases creating and interpreting the doctrine of "passive concealment" limit its application, however, to "controversies between residential homeowners and *residential builder/sellers* as an exception to the doctrine of caveat emptor." (Citations omitted; emphasis supplied.) *Toys 'R' Us v. Atlanta Economic Dev. Corp.*, 195 Ga. App. 195, 198 (1) (C) (393 SE2d 44) (1990); see also *Holmes v. Worthey*, 159 Ga. App. 262 (282 SE2d 919) (1981), aff'd, *Worthy v. Holmes*, 249 Ga. 104 (287 SE2d 9) (1982). The first questions for our consideration, then, are whether the Ryans made misrepresentations on the disclosure statement and, if so, whether the Jegadeeshes justifiably relied on such misrepresentations.

Here, the evidence is uncontroverted that the Ryans had not experienced leaks from late 1995 until they moved out of the house in August 2001; that the Ryans represented that they "[did not] know" whether the house had water problems at the time they signed the June 2003 disclosure statement, some months after moving out of the house; and that the Jegadeeshes' own inspector had uncovered evidence of significant water intrusion before the closing. We are aware that "the question of whether a purchaser has exercised reasonable diligence in inspecting real property is usually a jury question." (Footnote omitted.) *Akins v. Couch*, 271 Ga. 276, 278 (3) (b) (518 SE2d 674) (1999). Here, however, the Jegadeeshes can prove neither that the Ryans' denial of knowledge concerning the water leaks was a misrepresentation nor that the Jegadeeshes themselves did not know before closing on the house that the basement had such leaks. The trial court thus did not err when it granted the Ryans' motion for judgment notwithstanding the mistrial. See *Rhone*, 270 Ga. App. at 719 (5) (reversing denial of summary judgment when plaintiff had failed to produce evidence

that defendants had made misrepresentations to him); *El-Amin v. Nalley Motor Trucks*, 215 Ga. App. 509, 510 (451 SE2d 61) (1994) (affirming grant of summary judgment to seller when odometer disclosure statement warned that odometer was incorrect, and when the buyer admitted that the seller had told him that he did not know the correct mileage on the vehicle).

3. The Jegadeeshes also argue that the trial court erred when it granted the Ryans' motions for directed verdict concerning the Ryans' other responses on the disclosure statement. Again, we disagree.

(a) As in the case of the Ryans' response to question 6 (a) concerning water damage, their response to question 6 (b) that no repairs were "being made to control any water or dampness problems" referred to the time at which they completed the disclosure statement. As there was no evidence that such repairs were being made at the time the Ryans completed the statement, and therefore no evidence of a misrepresentation, the trial court did not err when it directed a verdict on this issue. See *Rhone*, 270 Ga. App. at 719 (5).

(b) The evidence is also uncontroverted that Fulton County issued a certificate of occupancy for the house, and that it would not have done so without permitting the septic system. Since the Jegadeeshes present no evidence from which the jury could reasonably infer that the Ryans knew by June 2003 that any permits had not been obtained, the trial court did not err directing a verdict as to the Ryans' response to question 5 (f). *Rhone*, 270 Ga. App. at 719 (5).

(c) Likewise, it is undisputed that at the time they signed the disclosure statement, the Ryans had not been involved in any "litigation or claim" concerning their house. Although there was evidence that the Ryans had complained in 1995 about water in the basement as well as the unpermitted septic system to their builder, it is undisputed that the outcome of these complaints was their *withholding* of money owed to the builder. No legal claim was ever commenced on these matters, and no money "in lieu of repairs" was ever paid. It follows that the trial court did not err when it directed a verdict concerning the Ryans' responses to question 11. See *Rhone*, 270 Ga. App. at 719 (5).

4. In light of our holdings above, the Jegadeeshes' remaining assertions of error are moot.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JULY 24, 2008 —
RECONSIDERATION DENIED AUGUST 18, 2008 — ▮▮▮▮▮▮

*Kumar & Pathak, Roy A. Banerjee*, for appellants.

YALE LAW LIBRARY

*Bodker, Ramsey, Andrews, Winograd & Wildstein, Robert D. Wildstein, Duncan & Adair, George E. Duncan, Jr., Jennifer C. Adair*, for appellees.