**THIRD DIVISION**
**GOBEIL,**
**COOMER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 20, 2019**

# In the Court of Appeals of Georgia

A18A1958. STARDUST, 3007, LLC et al. v. CITY OF BROOKHAVEN.

A19A0228. STARDUST, 3007, LLC et al. v. CITY OF BROOKHAVEN.

GOBEIL, Judge.

In Case No. A18A1958, Stardust, 3007, LLC ("Stardust") appeals the DeKalb County Superior Court's order finding it in civil and criminal contempt for violating the court's previously issued injunction, which restrained Stardust and its owner Michael Morrison from operating a sexual device shop at 3007 Buford Highway NE in the City of Brookhaven ("the City") due to Stardust's failure to comply with the relevant City ordinance. Stardust argues that (1) the superior court erred in holding Stardust and Morrison in criminal contempt because the City failed to prove contempt beyond a reasonable doubt ; (2) the superior court exceeded the statutory maximum

fine of $1,000 for a single act of criminal contempt ; (3) the superior court erred in granting the City attorney fees without first holding an evidentiary hearing ; and (4) the injunction violates the First Amendment of the Georgia Constitution.

Additionally, in companion Case No. A19A0228, Stardust appeals a second order finding it in civil contempt for violating the same injunction on several dates in November 2017. In its sole enumeration of error, Stardust argues that the superior court erred in its method of awarding civil contempt fines because Stardust's conduct constituted a single act of contempt.

In reviewing these cases, we bear in mind that "[t]he question of whether a contempt has occurred is for the trial court, and its determination will be overturned only if there has been a gross abuse of discretion." *Affatato v. Considine*, 305 Ga. App. 755, 760 (2) (a) (700 SE2d 717) (2010) (citation and punctuation omitted). "Once an act has been determined to constitute contempt of court, the action the court takes to deal with the contempt determines whether the contempt is deemed 'criminal' contempt or 'civil' contempt." *Rhone v. Bolden*, 270 Ga. App. 712, 714 (2) (608 SE2d 22) (2004) (citation and punctuation omitted). "The distinction between criminal and civil contempt is that criminal contempt imposes unconditional punishment for prior contempt to preserve the court's authority and to punish disobedience of its orders.

2

Civil contempt, on the other hand, is conditional punishment which coerces the contemnor to comply with the court order." Id. (citations and punctuation omitted). For the reasons that follow, we affirm in both cases.

*Background/Procedural History*

After its incorporation, the City enacted Ordinance 2013-01-51 in January 2013 to "regulate sexually oriented businesses in order to promote the health, safety, and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within the City" ("the Code"). This ordinance was amended in May 2013. The Code, as amended, applies to various types of "sexually oriented businesses," including, as relevant here, "sexual device shops," which the code defines as "a commercial establishment that regularly features sexual devices" and does not include "any pharmacy, drug store, medical clinic, or any establishment primarily dedicated to providing medical or healthcare products or services." "Regularly" is defined as "the consistent and repeated doing of an act on an ongoing basis," and "[f]eature means to give special prominence to." Finally, "[s]exual [d]evice" is defined as

3

any three (3) dimensional object designed for stimulation of the male or female human genitals, anus, buttocks, female breast, or for sadomasochistic use or abuse of oneself or others and shall include devices commonly known as dildos, vibrators, penis pumps, cock rings, anal beads, butt plugs, nipple clamps, and physical representations of the human genital organs. Nothing in this definition shall be construed to include devices primarily intended for protection against sexually transmitted diseases or for preventing pregnancy.

The Code sets up a licensing system for sexually oriented businesses and their employees and makes it "unlawful for any person to operate a sexually oriented business in the City without a valid sexually oriented business license." The Code also sets out "spacing requirements" for sexually oriented businesses in the City. Specifically, it prohibits a sexually oriented business from (1) operating "within 100 feet of another sexually oriented business" and/or (2) operating "within 300 feet of a residential district, place of worship, park, or public library."

In February 2013, after the enactment of the Code, Michael Morrison opened Stardust in the City, and applied for an occupational tax certificate as required under the City Code. In the occupational tax certificate, Stardust's "[d]ominant [b]usiness [a]ctivity" was described as "Retail–Smoke Shop, Tobacco; related accessories;

4

gifts." In the application, Stardust expressly denied that it would be a sexually oriented business "as defined by the Brookhaven City Code." It is undisputed that Stardust shares a property line with the Pink Pony, an adult entertainment club and sexually oriented business, and Stardust is also within 300 feet of a residential area.

In approximately April 2013, Stardust sent the City a letter stating that it would be adding merchandise covered under the Code to its inventory, and asked whether an amended business licence was necessary. Without waiting for the City's response, Stardust began selling items that qualified as "sexual devices" under the Code. Thereafter, in June 2013, the City began issuing citations to Stardust for violating the Code by (1) operating a sexually oriented business without a sexually oriented business license; (2) operating a sexually oriented business within 100 feet of another sexually oriented business; (3) operating a sexually oriented business within 300 feet of a residential area; and (4) "failing to identify the lines of business at the time of business registration[.]"

In July 2014, Stardust and Morrison filed a civil complaint in DeKalb County Superior Court challenging, in relevant part, the Code on the ground that it violated the Equal Protection, Due Process, and Free Speech Clauses of both the United States Constitution and the Georgia Constitution. The City counterclaimed and sought

injunctions prohibiting Stardust and Morrison from operating a sexually oriented business without a proper license and in violation of the Code's spacing requirements.[1] The City ultimately moved for summary judgment and a permanent injunction. On May 22, 2017, the DeKalb County Superior Court granted summary judgment in favor of the City and issued a permanent injunction enjoining Morrison, Stardust, and its employees "from engaging in or committing any of the following acts[:]"

> a. Operating a sexual device shop without a valid sexually oriented business license issued by the City of Brookhaven.

> b. Operating a sexual device shop within 100 feet of any portion of the property line of another sexually oriented business.

---

[1]Notably, while the civil complaint was pending in the DeKalb County Superior Court, Stardust and Morrison filed a federal civil suit in the United States District Court for the Northern District of Georgia, challenging the constitutionality of the Code on a variety of grounds, including that it violated Stardust's First Amendment rights under both the United States and Georgia Constitutions. The United States District Court granted summary judgment in favor of the City of Brookhaven on each of Stardust's federal constitutional claims and dismissed without prejudice Stardust's state constitutional claims. The United States Court of Appeals for the Eleventh Circuit affirmed on appeal. *Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164 (11th Cir. 2018).

c. Operating a sexual device shop within 300 feet of any portion of the boundary line of a residential district, or the property line of a place of worship, park, or public library.

Measurements shall be made in a straight line without regard to intervening structures or objects. Consistent with the City's narrowing construction, *Stardust will be considered a sexual device shop for purposes of this injunction only if it regularly displays on its premises at least 100 sexual devices*.

(emphasis supplied). Stardust appealed to our Supreme Court. The Supreme Court affirmed pursuant to Supreme Court of Georgia Rule 59[2] without opinion on February 19, 2018.

*Case No. A18A1958: The First Contempt Proceeding*

---

[2] Supreme Court of Georgia Rule 59 is similar to our Rule 36 and provides that, in any civil case, the Supreme Court may affirm without an opinion when it determines that "one or more of the following circumstances exist and is dispositive of the appeal:

(1) The evidence supports the judgment;

(2) No harmful error of law, properly raised and requiring reversal appears; or

(3) The judgment of the court below adequately explains the decision and an opinion would have no precedential value."

7

On August 4, 2017, while Stardust's appeal of the injunction was pending in our Supreme Court, the City filed a motion seeking to hold Stardust and Morrison in criminal and civil contempt for violating the permanent injunction and requesting attorney fees.[3] The City argued that Stardust had not applied for a sexually oriented business license and had continued to operate a sexual device shop by displaying more than 100 sexual devices in its store in violation of the injunction on the following dates in 2017: May 24, May 28, June 1, June 2, July 20, July 23, and July 31. The City argued that on each of those seven dates Stardust violated all three prohibited acts set forth in the injunction, totaling 21 separate violations, and sought criminal contempt sanctions of $1,000 per violation. The City also sought civil contempt sanctions to prevent future violations of the injunction. Finally, the City

---

[3] Although Stardust's appeal of the injunction was pending at the time the City filed its contempt motion, the superior court had jurisdiction to enforce the permanent injunction. OCGA § 9-11-62 (a) ("Unless otherwise ordered by the court, an interlocutory or final judgment in an action for an injunction or in a receivership action shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal."); see also *Knapp v. Cross*, 279 Ga. App. 632, 634 (1) (632 SE2d 157) (2006) (holding that OCGA § 9-11-62 (a) creates "an exception to the automatic supersedeas provisions[,]" and therefore, the trial court had the authority to hold the appellant in contempt even though his appeal of the permanent injunction was pending).

requested attorney fees and litigation expenses related to pursuing the contempt action under OCGA § 9-15-14 (a) and (b).[4]

In response, Stardust did not address the merits of the City's argument that it should be held in contempt for violating the injunction. Instead, Stardust reiterated its constitutional challenges to the injunction. With regard to attorney fees, Stardust argued that, should it be found in contempt, it was entitled to a separate hearing before any such fees could be awarded. Stardust further argued that the City was not entitled to attorney fees because the City had not tendered any evidence of fees or costs and had not shown that Stardust's conduct justified an award of fees as a sanction under OCGA § 9-15-14.

---

[4] OCGA § 9-15-14 (a) provides that, in any civil action, "reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." Likewise, OCGA § 9-15-14 (b) provides that a court "may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action . . . [if the court finds] that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification . . . or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct."

9

On October 31, 2017, the City filed a reply brief, and the superior court conducted an evidentiary hearing.[5] Following the hearing, the City submitted a letter brief on its attorney fees and expenses request, accompanied by a supporting affidavit from counsel and billing records for services rendered from 5/22/2017 to 11/1/2017 related to the contempt action. The total for services rendered during this time period was $23,874.36.

On November 9, 2017, the superior court issued an order finding beyond a reasonable doubt that Stardust and Morrison were guilty of criminal contempt for willfully violating the injunction. The court found that "[t]he evidence that Stardust is willfully operating a sexual device shop [was] overwhelming," referencing evidence presented at the hearing, including the presence of two outdoor signs and lettering in Stardust's windows promoting "Toys" and "Lubes," and lighted display cases inside the store featuring sexual devices, as well as a separate room featuring well over 100 different types of sexual devices, including dildos and vibrators. The Court then found beyond a reasonable doubt that Stardust violated all three proscriptions of the injunction on each day in question. Pursuant to OCGA § 15-6-8

_____

[5]A transcript of the October 31, 2017 evidentiary hearing was not included as part of the record on appeal.

(5), the court imposed criminal contempt fines on Stardust and Morrison for the violations, totaling $10,500, for which they were jointly and severally liable. Additionally, in an effort "[t]o prevent future violations of–and to coerce compliance with–the Injunction Order," the court imposed a $10,000 prospective fine for each future violation. The court also found that the City was entitled to recover $23,874.36 in attorney fees and expenses, under OCGA § 9-15-14 (a) and (b). In support of this finding, the court noted that the October 31, 2017 hearing revealed "the absence of any justiciable law or fact on which it could be reasonably believed that a court would accept Stardust's position"; that "Stardust's position 'lacked substantial justification'"; and that Stardust's conduct in violating the injunction "'unnecessarily expanded the proceeding.'" The appeal in Case No. A18A1958 followed.

1. In two related enumerations of error, Stardust argues that the superior court erred in holding it and Morrison in criminal contempt because the City failed to prove contempt beyond a reasonable doubt. We conclude that Stardust has failed to meet its burden to show error by the record.

In finding Stardust and Morrison in criminal contempt, the superior court relied upon the witness testimony and exhibits presented at the evidentiary hearing on October 31, 2017. However, the record does not contain a transcript of the evidentiary

11

hearing. "In the absence of a transcript, this Court must assume that the trial court properly exercised its discretion in finding [the appellants] in contempt." *Rice v. Lost Mountain Homeowners Ass'n, Inc.*, 288 Ga. App. 714, 715 (1) (a) (655 SE2d 214) (2007); see also *City of Byron v. Betancourt*, 242 Ga. App. 71, 72-73 (2) (528 SE2d 841) (2000) (explaining that "it is the duty of the appellant to include in the record those items which will enable the appellate court to perform an objective review of the evidence and proceedings," and, therefore, "where the transcript is necessary, as in the case sub judice, and appellant omits it from the record on appeal or fails to submit a statutorily authorized substitute, the appellate court must assume the judgment below was correct and affirm.") (citation, punctuation, and footnote omitted). Although Stardust asserts in its brief that the City failed to carry its burden of proving criminal contempt beyond a reasonable doubt , "[a]ssertions of evidence [or a lack of evidence] in briefs or enumerations of error cannot satisfy [the appellant's] duty" to affirmatively show error by the record. *Rice v. Baker*, 264 Ga. App. 704, 704 (1) (592 SE2d 186) (2003) (citation, punctuation, and footnote omitted). Accordingly, because we do not have a transcript of the October 31, 2017 evidentiary hearing, we must assume that the trial court did not abuse its discretion in finding that Stardust and Morrison were in criminal contempt.

12

2. Stardust argues that the superior court exceeded the statutory limit of a $1,000 fine per act of criminal contempt because its conduct only constituted a single act of contempt (operating a sexual device shop without a sexually oriented business license). Stardust maintains that operating a sexual device shop within 300 feet of a residential area or within 100 feet of another sexually oriented business cannot serve as separate acts of contempt. This argument is unpersuasive.

Under OCGA § 15-6-8 (5), a superior court may punish criminal contempt "by fines not exceeding $1,000.00, by imprisonment not exceeding 20 days, or both." "These penalties are applicable to each separate act of contempt found by the trial court." *Reece v. Smith*, 292 Ga. App. 875, 876 (665 SE2d 918) (2008). The May 22, 2017 permanent injunction expressly prohibited Stardust and Morrison "from engaging in or committing *any of the following acts*":

a. Operating a sexual device shop without a valid sexually oriented business license issued by the City of Brookhaven.

b. Operating a sexual device shop within 100 feet of any portion of the property line of another sexually oriented business.

c. Operating a sexual device shop within 300 feet of any portion of the boundary line of a residential district, or the property line of a place of worship, park, or public library.

13

(emphasis supplied). The plain language of the injunction prohibits three separate acts. Thus a commission of any of those acts constitutes a separate violation of the injunction. Stardust does not dispute that it did not have a sexually oriented business license on the seven dates in question or that it is within 100 feet of another sexually oriented business and within 300 feet of a residential district. Rather, Stardust argues that the only contemptuous act that can exist is operating a sexually oriented business without a proper license, and that the operation of a sexual device shop within 100 feet of another sexually oriented business or within 300 feet of a residential area cannot serve as separate prohibited acts. However, this argument challenges the terms of the injunction itself, and such challenges cannot be raised in a contempt proceeding. See *Parland v. Millennium Const. Services, LLC*, 276 Ga. App. 590, 592 (1) (c) n.9 (623 SE2d 670) (2005) ("[A] challenge to the validity of an injunction cannot be made in a contempt proceeding to punish the violation of the injunction when there was opportunity for effective review of the injunction[.]) (citation and punctuation omitted).

The superior court found that both Stardust and Morrison violated all three proscriptions on each of the seven days in question, and that the violation of each individual provision of the injunction constituted a separate contemptuous act. We

14

discern no abuse of discretion in this determination. See *Affatato*, 305 Ga. App. at 760 (2) (a); see also *Rolleston v. Cherry*, 237 Ga. App. 733, 737 (5) (521 SE2d 1) (1999) ("Whether a contempt of court has been committed in the violation of an injunctive order, and how it shall be treated, are questions for the discretion and judgment of the court that issued the order, and its discretion will not be interfered with by this court unless there is an abuse of discretion.") (citation and punctuation omitted). Accordingly, the trial court was authorized to impose up to a $1,000 criminal contempt fine per each of the 21 violations. The criminal contempt fine of $10,500 was well below the maximum authorized fine. Thus the trial court did not err, and we affirm.

3. Stardust argues that the superior court erred in granting the City attorney fees, under OCGA § 9-15-14 (a) and (b), without first holding an evidentiary hearing. We disagree.

"In order for an award under OCGA § 9-15-14 to be valid, the trial court must conduct an evidentiary hearing to determine the amount of reasonable and necessary attorney fees, and the failure to do so is reversible error." *Shooter Alley, Inc. v. City of Doraville*, 341 Ga. App. 626, 628 (1) (b) (800 SE2d 588) (2017) (citation and punctuation omitted); see also *Williams v. Becker*, 294 Ga. 411, 413 (2) (a) (754 SE2d

15

11) (2014) ("[T]he court must hold an evidentiary hearing, after due notice of the fees issue, to provide the [adverse] party the opportunity to confront and challenge the evidence regarding the need for and value of the legal services at issue."). "An exception to this requirement exists where a party against whom attorney fees may be awarded waives the hearing either expressly or by its conduct." *Shooter Alley*, 341 Ga. App. at 628 (1) (b). The City argues that Stardust expressly waived its right to a separate evidentiary hearing by not objecting to the Court's proposal at the October 31, 2017, contempt hearing that the City would submit its attorney fees evidence after the hearing via letter brief, and by its conduct when it did not respond to the City's letter brief.

However, as discussed above, we do not have a transcript from the October 31 hearing, and, the parties do not agree as to what transpired at the hearing regarding this issue. Therefore, we cannot determine whether Stardust expressly waived its right to a hearing. Nevertheless, the City's contempt motion put Stardust on notice that the City was seeking attorney fees and litigation costs under OCGA § 9-15-14 (a) and (b). Three days after the contempt hearing, the City submitted its letter brief detailing its request for attorney fees and litigation expenses, along with a supporting affidavit from the City's counsel, and itemized billing records. The total for services rendered

16

during the relevant time period was $23,874.36. Stardust did not respond or object to the letter brief, affidavit, or billing records. Seven days later, the trial court entered an order granting the City's request for attorney fees and costs. Thus, the record demonstrates that Stardust had a clear opportunity to challenge the request for attorney fees and costs, and it waived the right to an evidentiary hearing by failing to respond or object to the City's request. See *Shooter Alley*, 341 Ga. App. at 628-29 (1) (b) (holding that the appellant waived its right to an evidentiary hearing by its conduct, where the appellant was aware that the appellee was requesting attorney fees and failed to respond or object to the appellee's post-hearing affidavit requesting attorney fees and costs).

4. Stardust argues that the injunction violates the First Amendment of the Georgia Constitution.[6] We conclude that this claim is procedurally barred.

Stardust raised this identical claim in its appeal from the issuance of the injunction, and our Supreme Court rejected it when it affirmed without opinion in Case No. S18A0213. OCGA § 9-11-60 (h) provides that "any ruling by the Supreme

_____

[6]Although Stardust refers generally to the First Amendment without specifying whether it is referring to the United States Constitution or the Georgia Constitution , given Stardust's statement in its brief that it is not pursuing federal claims in this proceeding, we construe this claim as referring solely to the First Amendment of the Georgia Constitution.

17

Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." And, Rule 59 decisions although "unreported [and] nonprecedential . . . are still binding on the parties, for they establish the law of the case as provided by OCGA § 9-11-60 (h)." *Rolleston Living Trust v. Kennedy*, 277 Ga. 541, 542 (591 SE2d 834) (2004). Thus, Stardust is precluded from relitigating this issue. Id. at 543.

Accordingly, for the reasons set forth above, we affirm in Case No. A18A1958.

*Case No. A19A0228: Second Contempt Proceeding*

On November 20, 2017, while Stardust's appeal of the first contempt order was pending in this Court, the City filed a second motion for enforcement of civil contempt sanctions in the Superior Court of DeKalb County. The City argued that, despite the first contempt order, Stardust and Morrison continued to operate a sexual device shop in violation of the injunction on the following seven dates in 2017: November 10, 11, 13, 14, 15, 16, and 17. The City maintained that on each of those dates, Stardust and Morrison violated all three of the proscriptions set forth in the injunction, for a total of 21 violations, and argued that the $10,000 prospective civil contempt fine should be imposed for each of those violations for a total of $210,000.

18

In response, Stardust argued that it had taken steps since the issuance of the first contempt order to comply with the injunction. For instance: it had covered up all mention of adult toys on the store's window signs and other signs on the store's property; it had dispersed the adult toys it continued to sell throughout the store so that no room was dedicated to adult products; it had removed adult toys from the glass display cases; it reduced the adult toy inventory from 10% to 5% and had reduced the stock keeping units to less than 100 sexual devices; and it added more general healthcare products to its store, "including dental dams, condoms, body massagers, latex gloves, gauze bandages, speculums, enema kits, feminine hygiene and douching products, HIV/STD testing kits, and UV product sanitizing machines." Stardust also asserted that it had configured its displays of sexual devices to less than 100 in compliance with the injunction order, but maintained "that this reduction in inventory of devices, if maintained, will eventually force Stardust out of business." Accordingly, Stardust requested that the court deny the City's motion, or, in the alternative, "refrain from imposing sanctions because Stardust has substantial justification for operating in its current format."

The superior court held an evidentiary hearing on April 5, 2018, at which it heard testimony from two witnesses for the City and one rebuttal witness for Stardust,

considered a variety of exhibits, and heard arguments of counsel. Following the

hearing, the superior court found Stardust and Morrison in civil contempt of the

injunction. The court noted that in the first contempt proceeding it had imposed a

$10,000 prospective civil fine per violation, which was purgeable by abiding by the

injunction. The court found that both Stardust and Morrison had continued to violate

all three proscriptions of the injunction on each of the seven days in question, for a

total of 21 violations. Therefore, the court entered judgment in favor of the City and

imposed a $210,000 civil contempt fine against Stardust and a $210,000 civil

contempt fine against Morrison.[7] This appeal follows.

Notably, Stardust does not challenge the finding that it and Morrison were both

in contempt of the injunction. Rather, Stardust only challenges the manner in which

the fine was calculated. Nevertheless, we note that there was sufficient evidence

presented at the hearing from which the superior court could have found by a

preponderance of the evidence that both Stardust and Morrison were in civil contempt

_____

[7]We note that the sanctions imposed for civil contempt are not subject to a statutory limit. See *In re Harvey*, 219 Ga. App. 76, 80 (464 SE2d 34) (1995) (explaining that the monetary cap for contempt set forth in OCGA § 15-6-8 (5) is "not applicable to sanctions imposed for civil contempt"); see also *Shooter Alley*, 341 Ga. App. at 627-28 (holding that a civil contempt sanction of $10,000 per future violation of an injunction was a valid award).

of the injunction. See *In re Harvey*, 219 Ga. App. 76, 79 (464 SE2d 34) (1995) ("The appropriate standard of proof in a civil contempt case is preponderance of the evidence."). Specifically, at the evidentiary hearing, a code enforcement officer for the City and a private investigator testified that they visited the store on the dates in question[8] and observed over a thousand sexual devices on display throughout the store. The exhibits submitted by the City depicting various images of the products sold by Stardust and displays inside the store corroborated the witnesses' testimony. The store manager for Stardust testified that Morrison was responsible for the decision making regarding the store. The code enforcement officer testified that Stardust did not have a current business license or a sexually oriented business license. She also confirmed that Stardust is within 300 feet of a residential zone and within 100 feet of the Pink Pony, a sexually oriented business. Accordingly, the evidence was sufficient to support the superior court's finding that Stardust and Morrison were in violation of all three proscriptions of the injunction on the dates alleged.

---

[8] The code enforcement officer testified that she visited Stardust on November 10, 13, 14, 15, and 17. The private investigator testified that he visited Stardust on November 11 and 16.

5. Stardust argues that the superior court erred in imposing a $210,000 fine because its conduct only constituted a single act of contempt (operating a sexual device shop without a sexually oriented business license), and operating within 300 feet of a residential area or within 100 feet of another sexually oriented business cannot serve as separate acts of contempt.[9] Stardust raised this exact argument in Case No. A18A1958, and we find this argument unpersuasive for the same reasons set forth in Division 2.

Alternatively, Stardust argues that, even if a violation of each provision of the injunction can constitute a separate act, it is arbitrary for the superior court to consider each calendar day as a separate violation, particularly given that the injunction makes no reference to a measure of time as to how the contumacious act will be gauged. As an initial matter, Stardust never raised this argument in the trial court, and therefore, it is waived. *Locke's Graphic & Vinyl Signs, Inc. v. Citicorp Vendor Finance, Inc.*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007) ("An argument not raised in the trial court is waived and cannot be raised for the first time on appeal."). Additionally, this argument challenges the validity of the injunction

[9]Although the City argues that Stardust did not preserve this argument for appeal because it did not raise it below, we note that Stardust's counsel made such an argument during closing arguments at the evidentiary hearing.

22

itself (in terms of how contemptuous conduct is measured under the injunction), and thus, cannot be raised in a contempt proceeding. See *Parland*, 276 Ga. App. at 592 (1) (c) n.9 ("[A] challenge to the validity of an injunction cannot be made in a contempt proceeding to punish the violation of the injunction when there was opportunity for effective review of the injunction[.]").

Regardless, even assuming, arguendo, that these procedural hurdles did not exist, "[w]hether a contempt of court has been committed in the violation of an injunctive order, and how it shall be treated, are questions for the discretion and judgment of the court that issued the order, and its discretion will not be interfered with by this [C]ourt unless there is an abuse of discretion." *Rolleston*, 237 Ga. App. at 737 (5) (citation and punctuation omitted).

The parties have been in litigation both in state and federal court over Stardust's selling of sexual devices in violation of the Code since 2014. The injunction for which Stardust has been found in contempt issued on May 22, 2017, several months prior to the November 2017 violations. The injunction clearly set forth the three prohibited acts and expressly provided that "Stardust will be considered a sexual device shop for purposes of this injunction only if it regularly displays on its premises at least 100 sexual devices." Thus, Stardust could have

complied with the injunction by simply displaying fewer than 100 sexual devices, but the evidence presented at the hearing established that it failed to do so. Instead, on the seven days in November 2017 at issue, it continued to display at least 1,000 sexual devices, which rendered it a "sexual device shop" as defined in the injunction. Furthermore, this contempt proceeding was the second one, and, therefore, Stardust was well aware of what was required to comply with the injunction, what civil penalties it would face if it failed to comply, and that the superior court would consider each calendar day as a separate violation. Accordingly, we discern no abuse of discretion in the superior court's determination that each calendar day on which Stardust violated the injunction constituted a separate contumacious act.

Consequently, for the reasons set forth above, we affirm in Case No. A19A0228.

*Judgment affirmed in Case No. A18A1958. Judgment affirmed in Case No. A19A0228. Coomer and Hodges, JJ., concur.*