**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 17, 2025**

# In the Court of Appeals of Georgia

A25A1063. ZIBTLUDA, LLC et al. v. CITY OF PEACHTREE CORNERS.

DAVIS, Judge.

This appeal requires us to decide whether the trial court erred in denying Zibtluda, LLC d/b/a Love Shack #2 ("Love Shack") and its chief operating officer's motion to dismiss on mootness grounds. The trial court entered an interlocutory injunction enjoining Love Shack from operating a sexually oriented business in the City of Peachtree Corners. Before making the injunction permanent, Love Shack asked the trial court to dismiss the action, claiming subsequent events had rendered the case moot. The trial court disagreed. The party seeking dismissal for mootness, it explained, carries a heavy burden of persuading the court that the challenged conduct is not capable of restarting. The trial court determined Love Shack did not

carry this burden and issued a permanent injunction thereafter. Finding no error, we affirm.

"We review the trial court's ruling on a motion to dismiss under the de novo standard of review." (Citation omitted.) *American Professional Risk Svcs. v. Gotham Ins. Co.*, 323 Ga. App. 776, 777 (748 SE2d 134) (2013).

So viewed, the record shows that, in March 2021, Love Shack applied for and was denied an occupational tax certificate by the City. Around the same time, the City also denied Love Shack a sexually oriented business license. Nonetheless, Love Shack continued operating without the requisite approvals. This prompted the City to seek interlocutory and permanent injunctive relief.

In 2022, the trial court issued an interlocutory injunction, which enjoined Love Shack and its then chief operating officer, Brian White, from operating the business until they obtained the requisite certificates and licenses. Love Shack then sought review of this ruling but later withdrew the appeal. Upon remittitur, the City pursued a permanent injunction based on, among other things, the likelihood that Love Shack's illegal conduct, unchecked by the court's injunctive powers, would resume. Love Shack opposed the permanent injunction and moved to dismiss the suit under

mootness principles. The business, it claimed, had permanently shut down in February 2022, and White had no intention of reopening it. So, from Love Shack's perspective, its post-injunction conduct rendered the case moot.

The City opposed the motion and, after oral argument, the trial court resolved the mootness issue against Love Shack. First, the trial court analyzed the voluntary cessation doctrine and, next, concluded Love Shack failed to carry its heavy burden under the doctrine's framework. From there, the trial court entered a permanent injunction prohibiting Love Shack and White from operating a sexually oriented business at 6073 Peachtree Pkwy in Peachtree Corners. This is their appeal.

1. Love Shack first argues that its decision to shut down caused the case to become moot and, in turn, required the trial court to dismiss the action.[1] We disagree.

Under the mootness doctrine, "when the remedy sought in litigation no longer benefits the party seeking it, the case is moot and must be dismissed." (Citation and punctuation omitted.) *Crary v. Clautice*, 318 Ga. 573, 576 (2) (899 SE2d 98) (2024); see also *Cardinale v. State*, 363 Ga. App. 873, 875 (1) (873 SE2d 256) (2022) ("When

---

[1] Love Shack does not challenge the sufficiency of the evidence underlying the permanent injunction. Nor does it take issue with the trial court's findings and conclusions of law or any other aspect of the trial court's rulings.

the act that is the subject of the requested relief is completed, then the matter is moot[.]") (citation omitted). In 2012, our Supreme Court announced an exception to this general rule. See *WMW, Inc. v. American Honda Motor Co.*, 291 Ga. 683 (733 SE2d 269) (2012). There, the Court explained that a litigant's "voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." (Citation omitted.) Id. at 685 (2); see also *Troiano v. Supervisor of Elections*, 382 F3d 1276, 1282 (II) (11th Cir. 2004)[2] ("The doctrine of voluntary cessation provides an important exception to the general rule that a case is mooted by the end of the offending behavior.").

But the case becomes moot, the Court explained further, if "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." (Citation and punctuation omitted.) *WMW, Inc.*, 291 Ga. at 685 (2). The "heavy burden of persuading the court . . . lies with the party asserting mootness." Id. (citing *Friends of the Earth v. Laidlaw Environmental Svcs. (TOC)*, 528

---

[2] The *WMW, Inc.* Court adopted the federal courts' analysis and application of the voluntary cessation doctrine. See 291 Ga. at 685 (2). Accordingly, we also look to federal law to aid our analysis.

U.S. 167 (120 SCt 693, 145 LEd2d 610) (2000)). Thus, if subsequent events make it absolutely clear that Love Shack will not reopen or otherwise return to its wrongful behavior after the suit terminates, then the case is moot.

To satisfy its heavy burden, Love Shack produced two affidavits, one of which claimed that Love Shack no longer leased the space it once occupied and that it permanently closed in February 2022. In the second affidavit, White insisted his relationship with Love Shack had ended. He also disclaimed any interest in working for the organization "ever again." Beyond these declarations, Love Shack produced no documents, statements, or other evidence to support its contentions. As an example, although Love Shack repeatedly referenced a lease and a lease termination, it did not produce those materials when making its case below.

Given the minimal showing, Love Shack failed to satisfy the heavy burden of showing it has altogether given up on its bad behavior. The trial court noted, for example, that if the injunction was vacated there would be nothing to prohibit White's current company from resuming a similar operation or using the same trade name elsewhere — along with the "Love Shack" signs that remain on the vacated property — or negotiating a new lease and establishing an entirely new sexually oriented

5

business at the Peachtree Corner location. These questions lead us to a single conclusion: Love Shack's conclusory declarations fell short of making it "absolutely clear" that Love Shack could not reasonably be expected to do again what the City claimed it did in the past. Especially here, "we require[d] more than a private party's unsupported assertions[.]" *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F3d 1348, 1356 (III) (11th Cir. 2019).

To persuade us otherwise, Love Shack relies heavily on *City News & Novelty, Inc. v. City of Waukesha*, 531 U. S. 278 (121 SCt 743, 148 LE2d 757) (2001). In that case, a city denied an adult oriented business a license to operate. Id. at 282 (I). The business appealed the city's decision and, after a series of adverse rulings, petitioned the United States Supreme Court for review. Id. The business later withdrew its license application and closed soon afterward. Id. at 283 (II). That led *the city* to say the case was moot, a contention *the business* opposed. Id. Ultimately, the Supreme Court sided with the city after observing the dismissal would not "reward an arguable manipulation of [its] jurisdiction[.]" Id. at 284 (II).

Here, although the roles are reversed, unlike *City News & Novelty*, the defendant Love Shack argues for dismissal while the City-plaintiff urges we maintain the

injunction. So the potential for manipulation is strong, given that "a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." (Citation omitted.) *WMW, Inc.*, 291 Ga. at 685. In this way, the "[m]ootness doctrine protects *plaintiffs from defendants* who seek to evade sanction by predictable protestations of repentance and reform." (Citation and punctuation omitted; emphasis supplied.) *City News & Novelty*, 531 U.S. at 284 (II) n.1. Thus, aside from some factual similarities, *City News & Novelty* is mostly distinguishable and does not help Love Shack — whose conduct we are required to "view[ ] with a critical eye." *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (II) (132 SCt 2277, 183 LEd2d 281) (2012).

2. The trial court's permanent injunction restrained, among others, Love Shack's former chief operating officer, Brian White. White argues this was error because, according to him, he neither had nor has control over Love Shack's operations. Again, we disagree.

Under OCGA § 9-5-1, the trial court may issue injunctions that restrain private individuals (and corporations) who act "contrary to equity and good conscience." "[P]ast infractions and a reasonable fear of future infractions justify a permanent

injunction." *Jacobs v. Chatham County*, 295 Ga. App. 74, 77 (670 SE2d 885) (2008). As outlined above, Love Shack and White committed past infractions by continuing to operate without the necessary approvals and then failed to persuade the trial court that such infractions would not recur. For one thing, even though White says he cut ties with Love Shack, the injunction staves off future misconduct. And nothing except an injunction would prohibit White from rekindling his relationship with Love Shack and restarting the business. As such, based on the circumstances in this case, the trial court did not abuse its discretion in enjoining White along with the corporate entity. See OCGA § 9-5-8 ("The granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case.").

White also appears to argue that Love Shack's corporate status limits the injunction's reach. We disagree. OCGA § 9-11-65 (d) authorizes injunctions against "the parties to the action, *their officers, agents, servants, employees, and attorneys* [.]" (Emphasis supplied.) As a party to the action, White falls within the statute's purview. He also fits two other categories: officer and employee. In fact, we upheld a similar injunction enjoining the owners and employees of a sexually oriented business. See *Stardust, 3007, LLC v. City of Brookhaven*, 348 Ga. App. 711, 719 (824 SE2d 595)

(2019). While that case centered on fines, White does not explain why the result should be different in this case. Plus, Love Shack's corporate status does not justify limiting the injunction since both Love Shack and White engaged in operating an unlicensed business and other malfeasance.

To conclude, a defendant's voluntary cessation of a challenged practice does not ordinarily moot the case unless the defendant satisfies the heavy burden of persuading the trial court that the conduct cannot reasonably be expected to recur. Love Shack did not carry its heavy burden. Therefore, we affirm the trial court's order denying Love Shack's motion to dismiss.

*Judgment affirmed. Rickman, P. J., and Gobeil, J., concur.*