A03A0924. ELLERIN & ASSOCIATES et al. v. BRAWLEY et al.
(589 SE2d 626)

SMITH, Chief Judge.

Ellerin & Associates and William J. Morton ("Ellerin") appeal from the trial court's ruling awarding them the net sum of $7,690.05 in attorney fees in connection with their representation of Steve and Cynthia Brawley in a medical malpractice action. Ellerin challenges the trial court's ruling on several grounds. We find that the trial court erred in several respects, necessitating that we reverse the trial court's order and remand the case.

The record shows that Ellerin asserted an attorney's lien against the proceeds of a settlement the Brawleys obtained in a medical malpractice suit on behalf of their son, who was injured during birth. Ellerin represented the Brawleys in the medical malpractice action and took the action through a jury trial, which ended in a mistrial. Shortly thereafter, the Brawleys dismissed Ellerin and settled with the defendant doctor. Ellerin then asserted its lien for unpaid attorney fees and expenses of litigation and filed a motion to intervene in the medical malpractice case and to foreclose its lien against the settlement proceeds. After an evidentiary hearing, the trial court entered an order awarding Ellerin a fee of $20,000, which was 40 percent of the settlement proceeds, the percentage specified in the contract between the parties. The trial court also concluded, however, that Ellerin was not entitled to recover $10,422.51 in additional unpaid expenses sought and that the Brawleys were entitled to a

---

[4] *McDonald v. State*, 256 Ga. App. 369, 370 (568 SE2d 588) (2002).

credit of $12,309.95 for expenses previously paid by them, which the trial court found unreasonable. The court subtracted these previously paid expenses from the $20,000 awarded to Ellerin as fee, leaving Ellerin with a net payment of only $7,690.05 from the settlement proceeds.[1]

1. In the lien Ellerin filed, it asserted its entitlement to a fee under the alternative ground of quantum meruit as well as under the contract. The alternative ground was also clearly raised at the hearing. The trial court decided, however, that the lien created by the fee contract was enforceable[2] and did not reach the alternative ground for awarding Ellerin's fee. The $20,000 fee awarded was based upon the provisions of the fee contract. On appeal, neither party questions the validity and enforceability of the fee contract. We must address this issue, however, because the trial court based several rulings on contract provisions, and those rulings are challenged on appeal.

No question exists that an attorney is entitled to a fee that has been earned. OCGA § 15-19-14. When a fee contract exists and the matter is brought to a successful conclusion by the attorney, the contract will govern the attorney's fee. But when such a contract exists "for the payment of a contingent fee, the happening of the contingency is a condition precedent to the right of the attorney to recover[ ] for his services, and the precise event which was contemplated must happen." (Citation and punctuation omitted.) *Overman v. All Cities Transfer Co.*, 176 Ga. App. 436, 438 (336 SE2d 341) (1985).

In this case, two contingencies are specified in the contract: before suit, the contingency that fixes the amount of the fee is that an "amount . . . be recovered." After suit is filed, the contingency specified is "any recovery." The meaning of the term "recovery" or "amount recovered" was "established in *May v. May*, 180 Ga. App. 581 (349 SE2d 766) (1986)." *Greer, Klosik & Daugherty v. Yetman*, 269 Ga. 271, 273 (1) (496 SE2d 693) (1998). In *May*, the contingency that controlled was "all sums recovered," and this court held:

Counsel must be held to the strict language of the instrument [counsel] prepared. "All sums recovered," therefore, means just that. The attorney was entitled to receive 25% of the monies [the attorney] recovered, not 25% of the judgment[s] nor of amounts recovered elsewhere by someone

---

[1] Ellerin's motion for reconsideration, pointing out a factual error in the trial court's original order, was granted. A new order, correcting the factual error but leaving the substance of the original order intact, was entered after reviewing the parties' submissions regarding the alleged error.

[2] We note that counsel for the Brawleys stated that the validity of the lien, as opposed to its amount, was not disputed.

else. The lien attached to the cause of action only to the extent of the sums *collected*.

(Citations omitted; emphasis supplied.) Id. at 582.

Applying these principles to the facts here, it is clear that no amount was "recovered" before suit. And while the Brawleys eventually "recovered" an amount after suit was filed, it is clear from the chronology of events that at the time they discharged Ellerin, that contingency had not yet occurred. The settlement offer was made in a telephone conversation on May 31, 2001, and confirmed in writing by letter dated that day. The offer was left open through 5:00 p.m. on June 8, 2001. On June 8, 2001, the Brawleys both discharged Ellerin and communicated their acceptance of the offer to counsel for the malpractice defendant. It is inconceivable that the Brawleys received or "recovered" the settlement proceeds that same day.[3] The phrase used in this fee contract, "amount recovered" or "recovery," cannot be distinguished meaningfully from either the term "all sums recovered" used in *May* or the term "any sum that may be recovered" used in *Yetman*. Here, as in those cases, it is clear that no sum had been collected by the Brawleys at the time the clients terminated the attorneys' representation, "so the contingency had not occurred." *Yetman*, supra, 269 Ga. at 273 (1). Here, as in *Yetman*, the trial court erred in determining the attorney's fee under the fee contract.

2. Our conclusion that Ellerin was not entitled to a fee under the contract does not mean, however, that Ellerin is entitled to no fee at all. Although OCGA § 15-19-14 secures an attorney's earned compensation by providing for a lien in favor of an attorney against funds recovered for the client, it does not specify how the amount of the fee is to be determined. *Yetman*, supra, 269 Ga. at 274 (1). When a contingent fee arrangement exists between a client and an attorney

> and the client prevents the contingency from happening, the attorney is entitled to reasonable attorney's fees for his services that have been rendered on behalf of the client. Thus, although prevented from recovering under the contract, the attorney still has [a] remedy in quantum meruit.

(Citations and punctuation omitted.) *Overman*, supra, 176 Ga. App. at 438.

---

[3] In fact, at the hearing on the motion for reconsideration, which took place on July 2, 2002, the Brawleys' counsel stated that he had the insurance check and requested that Ellerin sign it so that it could be deposited. It is apparent, therefore, that the Brawleys had not yet made the "recovery" that was stipulated in the contingency fee contract with Ellerin.

Quantum meruit literally means "as much as he deserves." It is an equitable doctrine based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby. Where quantum meruit is applicable, the provider may recover the reasonable value of goods or services transferred, but value is defined in terms of value to the recipient.

(Footnotes omitted.) *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 62-63 (1) (537 SE2d 670) (2000).

Ellerin submitted affidavits regarding its attorney fees, setting forth the attorneys' hourly rates and the number of hours expended on the Brawleys' behalf. The Brawleys argued at the hearing that the amount of fee as determined under the contract was excessive for various reasons and should be reduced, but they did not address the issues raised under a theory of quantum meruit. The trial court decided that the written contract governed the amount of the fee and did not consider the issue of the reasonable value of Ellerin's services to the Brawleys in light of the size of their recovery and the expenses they had already paid. We therefore vacate the trial court's award of a $20,000 fee to Ellerin and remand this case to the trial court for consideration of the reasonable value to the Brawleys of Ellerin's services.

3. Ellerin complains of the trial court's rulings with regard to whether the Brawleys were entitled to credits against the fee owed for certain expenses they paid. Because we have determined that the fee contract was unenforceable, reliance on the fee contract to support a ruling as to these expenses would be error. We have reviewed the trial court's rulings as to these expenses, and we conclude that some rulings were based upon the fee contract but others were based upon the trial court's determination either that the expenses were unreasonable or that they were caused by some wrongdoing on the part of Ellerin.

(a) For example, the trial court's ruling that the Brawleys were entitled to a credit for charges of $1,243.61 for photocopies, $364.61 for postage, and $234.10 for medical books was based explicitly upon the fee contract. And although the trial court found at least one expert's fee "outrageous" and questioned the practice of billing clients for the expense of electronic research and the time and expenses of two attorneys for out-of-town depositions, the court felt constrained by the fee agreement to allow them. Our ruling that the agreement no longer controls permits the trial court freedom on remand to decide what credit, if any, is due the Brawleys for expenses that were not both necessary and reasonable, based upon their value to the Brawleys.

(b) The trial court also credited the Brawleys with payment of $3,769.74 for expenses relating to the testimony of an expert who prepared a life care plan for the Brawleys' son based upon the trial court's determination that the expert's testimony was excluded because of "blatant and inexcusable errors by" Ellerin. But it appears from the hearing transcript that although the life care plan prepared by this witness was excluded, portions of her testimony were admitted, and the trial court should not have charged off completely all expenses relating to this witness. On remand, the trial court must decide what portion of the billed and paid expenses of procuring and presenting this expert's testimony was reasonable under the circumstances and what portion must be credited against the fee.

The trial court also credited the Brawleys with $6,695.36 already paid for "excessive charges issued by [Ellerin] relating to their travel by private rather than commercial aircraft." The private plane was owned by Dr. Morton, a physician and lawyer who was associated with Ellerin in the case. A factual dispute exists as to whether the Brawleys understood they would be billed for use of the plane. Dr. Morton explained how he computed the charges for the aircraft and testified that he did not make a profit on the expenses as billed. Although it appears undisputed that Dr. Morton did not make a profit on the expenses as billed, a discrepancy also exists regarding the amount billed, as Dr. Morton testified he billed the Brawleys only for two trips, totaling $3,805.50, while the trial court credited the Brawleys with $6,695.36. The reasonableness of this expense and the discrepancy between the amount of the credit and the amount Dr. Morton testified that he billed the Brawleys must be addressed upon remand.

4. The trial court also found that Ellerin was not entitled to more than $10,000 in additional expenses it incurred that remained unpaid, finding that circumstances surrounding tender of the last check for expenses by the Brawleys to Ellerin in the amount of $16,000 created an accord and satisfaction with regard to the agreement regarding expenses. In its original order, the trial court recited that the Brawleys had written on the check " 'this is all.' " On reconsideration, Ellerin pointed out that the Brawleys had not, in fact, written that notation on the check, and the order entered on reconsideration does not include this point. The trial court found, however, that based upon the evidence presented at the hearing on the motion for reconsideration, an accord and satisfaction was nevertheless created upon payment of the last expense check by the Brawleys.

The evidence presented at the hearing on the motion showed that in July 2000, Ellerin requested $16,000 from the Brawleys in anticipation of expenses of going to trial. Ellerin testified that the amount requested was a "really rough guess" of what it would take

for the remainder of the case. According to Ellerin, however, even by the time Brawley brought the check in, in December 2000, actual expenses had exceeded that "guess."

Steve Brawley, on the other hand, testified that he understood from Ellerin that the $16,000 would be sufficient to get them through trial and that when he presented the check to Ellerin he told Irwin Ellerin "that was all the money we had."

> An accord and satisfaction is a contract, which requires a meeting of the minds to render it valid and binding. A definite offer and complete acceptance, for consideration, create a binding contract. While an agreement may be oral, if the parties disagree on whether an agreement was reached, the agreement must be memorialized in a writing to be enforceable, and the absence of a writing prevents enforcement.

(Citations omitted.) *Moreno v. Strickland*, 255 Ga. App. 850, 852 (1) (567 SE2d 90) (2002). No writing memorializes the purported accord and satisfaction here. And it is obvious that no meeting of the minds existed. The trial court therefore erred in ruling that an accord and satisfaction was created.

The Brawleys' obligation to pay expenses was controlled by the fee agreement, and we have held that agreement unenforceable. As with other expenses, the trial court therefore must decide on remand whether the additional expenses sought by Ellerin were necessary and reasonable based upon their value to the Brawleys.

5. Ellerin's final enumeration of error, in which it contends that the trial court lacked subject matter jurisdiction to fashion the equitable remedy of set-off, is rendered moot by our holding that the fee contract is unenforceable.

*Judgment reversed. Ruffin, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 4, 2003.

*Ellerin & Associates, Irwin M. Ellerin, William L. Phalen III, William J. Morton*, pro se.

*Gambrell & Stolz, John Hinton IV, Robert G. Brazier, Seaton D. Purdom*, for appellees.