A06A0001. AMSTEAD v. McFARLAND.

(632 SE2d 707)

ANDREWS, Presiding Judge.

Laura Lee Amstead appeals from the trial court's order denying her motion for recoupment of attorney fees from Robert P. McFarland,

---

[1] *Auto-Owners Ins. Co. v. Karan, Inc.*, 272 Ga. App. 620 (612 SE2d 920) (2005).

[2] *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545 (629 SE2d 260) (2006).

Sr. (McFarland, Sr.), who originally represented her and her ex-husband, Robert Amstead, in their wrongful death claim arising from the death of their son, Alan, in a motor vehicle accident.

Following the signing of a contingent fee contract by Laura and Robert Amstead with McFarland, Sr. in March 2003, McFarland, Sr. filed a wrongful death action in June 2003, on behalf of Laura Amstead and Robert Amstead against several defendants.[1]

A series of e-mails exchanged between Amstead and McFarland, Sr. in October and early November 2003, reflect that Laura Amstead had become concerned about her personal information being requested by the defendants during discovery, her fear of one of the defendants, and her increasing discomfort in having to deal with her ex-husband, and wanted out of the case. In response to her request to get out of the case, McFarland, Sr. advised her, via e-mail, that if she got out of the case, it would damage the chance of recovering for the life of her son. He told her he would need a "letter from you, not an e-mail, demanding that I move the court to have your [sic] removed as plaintiff in the case and stating that you will have no further involvement with the matter *including distribution of funds which will go entirely to your ex-husband*." (Emphasis supplied.) Laura Amstead's letter dated October 20, 2003, stated that "I am demanding that you move the court to have me removed as plaintiff in the case. I will have no further involvement with the matter *including the distribution of funds which will go entirely to my ex-husband[,]*" and it was received by McFarland, Sr. (Emphasis supplied.) McFarland, Sr. acknowledged during his testimony at the apportionment hearing in February 2005, that he never told Laura Amstead that she had the right to withdraw from the litigation but could still pursue a portion of the settlement pursuant to OCGA § 19-7-1.

On November 5, 2003, a withdrawal of Laura Amstead was filed by McFarland, Sr. in the wrongful death case, stating that Amstead "hereby withdraws as plaintiff of record. Any and all interest that she has in this case is transferred to . . . Robert Alan Amstead."

In November 2004, a year after Laura Amstead's withdrawal from the case, McFarland, Sr. negotiated a settlement on behalf of Robert Amstead for $325,000 with the defendants and requested that Laura Amstead sign the settlement agreement, which she refused to do. That agreement stated that the full $325,000 was to be paid to Robert Amstead and his attorney, McFarland, Sr., and that Laura Amstead understood that, by executing the release, she was waiving

---

[1] O'Brien Property Management, Inc., John D. Blankenship, Robert Bennett Davis, and David L. Ellison.

any claims against the defendants. On November 29, 2004, McFarland, Sr. filed, on behalf of Robert Amstead, a motion to enforce settlement, arguing that Laura Amstead had transferred her interest to Robert Amstead and her signature on the settlement agreement was not necessary to settlement.

Laura Amstead received her service copy of this motion on November 30. She read it on December 1 and realized that she had the right to pursue part of the proceeds of the settlement because the motion quoted portions of OCGA § 19-7-1. She then demanded her portion.

Laura Amstead consulted with another attorney who began representing her on December 23, 2004. That same day, this attorney faxed a letter to McFarland, Sr. notifying him of the representation and asking him to hold all funds in trust, pending a hearing on the equitable apportionment issue. On December 29, 2004, the trial court's order enforcing the settlement was entered, reflecting that Laura Amstead had withdrawn as a party plaintiff and that Robert Amstead, through his counsel, McFarland, Sr., had negotiated a settlement for the limits of defendants' respective insurance policies and had executed a release and settlement agreement. Further, the order stated that Laura Amstead had refused to execute the agreement and was claiming an interest in the proceeds. The court directed that, upon receipt of the settlement proceeds, McFarland, Sr. deposit them in his escrow account and that he was "authorized to immediately receive his contracted fees and any authorized expenses of litigation." Notice was to be given to Laura Amstead to assert her interest in the proceeds within 30 days. On January 4, 2005, McFarland, Sr., on behalf of Robert Amstead, filed his notice of compliance with the court's order of December 29, and stated that his contracted fees totaled $108,333.34, one third of the total settlement proceeds. That same day, McFarland, Sr. filed a dismissal of all defendants in the case.

On January 7, 2005, new counsel filed his notice of appearance on Laura Amstead's behalf. On January 12, 2005, counsel filed Laura Amstead's motion under OCGA § 19-7-1 (c) (6) for equitable apportionment of the settlement proceeds. On February 18, 2005, McFarland, Sr. filed his motion to stay distribution of funds to Laura Amstead only "until any issue of attorney fees is fully resolved." By order of March 30, 2005, the trial court entered its order staying distribution of any funds to Robert or Laura Amstead pending resolution of the dispute regarding attorney fees.

The pertinent parts of OCGA § 19-7-1 state:

. . .

(c) (1) In every case of the homicide of a child, minor or sui juris, there shall be some party entitled to recover the full value of the life of the child, either as provided in this Code section or as provided in Chapter 4 of Title 51.

(2) If the deceased child does not leave a spouse or child, the right of recovery shall be in the parent or parents, if any, given such a right by this paragraph as follows: . . .

(C) *If both parents are living but are divorced, separated, or living apart, the right shall be in both parents.* However, if the parents are divorced, separated, or living apart and one parent refuses to proceed or cannot be located to proceed to recover for the wrongful death of a child, the other parent shall have the right to contract for representation on behalf of both parents, thereby binding both parents, and the right to proceed on behalf of both parents to recover for the homicide of the child with any ultimate recovery to be shared by the parents as provided in this subsection. *Unless a motion is filed as provided in paragraph (6) of this subsection, such a judgment shall be divided equally between the parents by the judgment*; and the share of an absent parent shall be held for such time, on such terms, and with such direction for payment if the absent parent is not found as the judgment directs. Payment of a judgment awarded to the parent or parents having the cause of action under this subparagraph or the execution of a release by a parent or parents having a cause of action under this subparagraph shall constitute a full and complete discharge of the judgment debtor or releasee. . . .

(6) For cases in which the parents of a deceased child are divorced, separated, or living apart, *a motion may be filed by either parent prior to trial requesting the judge to apportion fairly any judgment amounts awarded in the case. Where such a motion is filed, a judgment shall not be automatically divided.* A post-judgment hearing shall be conducted by the judge at which each parent shall have the opportunity to be heard and to produce evidence regarding that parent's relationship with the deceased child. *The judge shall fairly determine the percentage of the judgment to be awarded to each parent.* In making such a determination, the judge shall consider each parent's relationship with the deceased child,

including permanent custody, control, and support, as well as any other factors found to be pertinent. The judge's decision shall not be disturbed absent an abuse of discretion.

(Emphasis supplied.)

Following the post-judgment hearing provided for in subsection (6), the trial court entered its order of March 30, 2005, finding that Laura Amstead did not waive her right to share in the wrongful death proceeds recovered by withdrawing as a plaintiff in the litigation, despite the language McFarland, Sr. included in the withdrawal, and that she was to be awarded 75 percent of the proceeds with Robert Amstead receiving the remaining 25 percent.[2]

On May 18, 2005, Laura Amstead's motion for recoupment of attorney fees was filed. By order of June 23, 2005, after consideration of "oral arguments, all matters of record[,] and the applicable and controlling law," the trial court denied the motion for recoupment of attorney fees, concluding that Laura Amstead was bound by the fee agreement which she and Robert Amstead had signed with McFarland, Sr.

That agreement, signed on March 26, 2003, between "Client" (Laura Amstead and Robert Amstead) and "Attorney" (McFarland, Sr.) provided in pertinent part, that

[t]he Attorney will receive one-third (33.33%) of the net amount paid in satisfaction of any *ultimate judgment or compromise settlement proceeds*. . . . Any settlement would require the proceeds to be placed in the Escrow Account of McFarland & Associates, P.C. Then the Attorney will prepare a final distribution in accordance with this agreement. Both parties will execute the distribution agreement and then the Attorney will distribute in accordance with the list.

(Emphasis supplied.)

1. McFarland, Sr. urges the "any evidence" standard of review, while Amstead argues that the "plain legal error" standard of review is applicable. Because the trial court's order does not reflect that any evidence was taken at the hearing on the fee issue,[3] but is premised solely upon the contents of the contingency contract contained in the record, we use the plain legal error standard of review here. See *Rowen v. Estate of Hughley*, 272 Ga. App. 55, 56-58 (1) (611 SE2d 735) (2005); *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

---

[2] No appeal was taken from the apportionment ruling.

[3] There is no transcript of that hearing before us.

2. By basing its denial of Amstead's motion for recoupment of attorney fees on the contingency agreement alone, the trial court committed plain legal error.

It is blatantly apparent that, during the October 2003 discussions of Laura Amstead's withdrawal from the wrongful death suit, culminating with the filing of her withdrawal on November 5, 2003, Laura Amstead's interests and those of Robert Amstead became adverse, as did those of Laura Amstead and McFarland, Sr. See *Rhone v. Bolden*, 270 Ga. App. 712, 716-717 (4) (b) (608 SE2d 22) (2004). At that juncture, the attorney-client relationship between Laura Amstead and McFarland, Sr. was at an end,[4] even though Robert Amstead could proceed in the wrongful death suit on behalf of both parents, with any ultimate recovery to be shared by the parents as provided in OCGA § 19-7-1 (c) (2) (C). See *Rhone v. Bolden*, supra; *Belco Elec. v. Bush*, 204 Ga. App. 811, 813-814 (420 SE2d 602) (1992).

Also, at the point of Laura Amstead's withdrawal from the litigation, there had been no "ultimate judgment or compromise settlement" proceeds agreed upon or received as required by the contingency agreement to trigger McFarland, Sr.'s right to his fee under the agreement at that time. See *Greer, Klosik & Daugherty v. Yetman*, 269 Ga. 271, 273 (1) (496 SE2d 693) (1998); *Kirschner & Venker, P.C. v. Taylor & Martino, P.C.*, 277 Ga. App. 512, 513 (627 SE2d 112) (2006); *Lewis v. Smith*, 274 Ga. App. 528, 529 (1) (618 SE2d 32) (2005).

> In Georgia, an attorney discharged by his client is not entitled to collect a contingency fee, if the attorney "is discharged before the occurrence of the contingency specified in (the) contingen(cy) fee contract." *Greer, Klosik & Daugherty v. Yetman*, [supra at] 274 (2). See also *Ellerin & Assoc. v. Brawley*, 263 Ga. App. 860, 861-862 (1) (589 SE2d 626) (2003). Absent express contractual provisions addressing fees in the event of termination, the discharged attorney is limited to pursuing the equitable remedy of quantum meruit, under which he can recover the "reasonable attorney( ) fees for his services that have been rendered on behalf

---

[4] The relationship between attorney and client is one of special trust that requires complete fidelity. The relationship is unique because it is " 'founded in principle upon the elements of trust and confidence on the part of the client and of undivided loyalty and devotion on the part of the attorney.' " *AFLAC v. Williams*, 264 Ga. 351, 353 (1) (444 SE2d 314) (1994), quoting *Demov, Morris, Levin & Shein v. Glantz*, 53 NY2d 553, 556 (428 NE2d 387, 444 NYS2d 55) (1981).

of the client." (Citation and punctuation omitted.) *Overman v. All Cities Transfer Co.*, 176 Ga. App. 436, 438 (336 SE2d 341) (1985).

(Footnote omitted.) *Joseph H. King, Jr., P.C. v. Lessinger*, 276 Ga. App. 145, 146 (622 SE2d 381) (2005).

Certainly, Laura Amstead's withdrawal from the lawsuit and her inclusion of the language drafted by McFarland, Sr. purporting to sign over to Robert Amstead her share of any proceeds obtained in the lawsuit is tantamount to her discharge of McFarland, Sr. or, perhaps more appropriately stated, his discharge of her as a client.

We also do not agree with McFarland, Sr. and the trial court that *Weathers v. City of Hinesville*, 260 Ga. App. 6 (578 SE2d 477) (2003), is inapplicable in all respects to this matter because it is factually distinguishable.

There, attorney Griggs sued her former client Weathers for attorney fees. Griggs had represented Weathers in a wrongful death suit pursuant to OCGA § 19-7-1 following the death of her son in a water-filled pit owned by the City of Hinesville. Weathers told her ex-husband that she had hired Griggs, but he did not want to be represented by Griggs, although Griggs initially thought she was filing the suit on behalf of both parents. Only Ms. Weathers signed the contingency agreement with Griggs, which provided Griggs would receive 40 percent of the gross proceeds recovered. *Weathers v. City of Hinesville*, supra. Prior to Griggs' filing of the suit, Mr. Weathers obtained his own attorney to represent his interests. Griggs continued to negotiate with the City of Hinesville and its insurer in an effort to reach a settlement conclusive as to both parents. Mr. Weathers' attorney notified Griggs that he was representing Mr. Weathers, but did not file a motion to intervene in the suit. Griggs alone negotiated a potential settlement with the City of $200,000. When Mr. Weathers' attorney learned of this, he notified the City that he represented the ex-husband who wanted to make his own demand. All parties agreed to mediate the matter and a mediation was scheduled. Prior to the mediation, Griggs filed a motion to apportion any amount paid so that Ms. Weathers could potentially receive more money than Mr. Weathers. As a result of the mediation, the City agreed to pay $325,000 for the claims. No hearing was held regarding the motion to apportion and Griggs was fired by Ms. Weathers who then sought assistance of her ex-husband's attorney to assist in resisting Griggs' request for payment of her fees.

Pursuant to Griggs' motion for payment of her fees and expenses from the proceeds, the trial court granted the motion and awarded Griggs 40 percent of the initial $200,000 settlement figure which had been discussed and then found that the additional work by both

Griggs and Mr. Weathers' attorney resulted in the increase of the settlement to $325,000. The trial court then found that an additional $50,000 in attorney fees would be divided between Griggs and Mr. Weathers' attorney, resulting in a total due Griggs of $105,000 ($80,000 + $25,000).

This Court concluded that the trial court's order erroneously allowed recovery by Griggs from both Ms. Weathers' and Mr. Weathers' portions of the mediated amount, finding that the $200,000 was irrelevant because

> no *final* settlement was reached until the City of Hinesville agreed to pay $325,000 as a settlement of all claims with respect to the deceased son. As each parent was represented by independent counsel, and Griggs was only entitled to recover her fees based on the overall settlement proceeds that she was able to procure for *her* client, her attorney fees award should have only been $65,000 (i.e., 40 percent of $162,500).

(Emphasis in original.) *Weathers v. City of Hinesville*, supra at 9.

In that case, both parents wanted the proceeds split equally and there was no hearing held on Griggs' motion to apportion nor was any order issued regarding this issue. Therefore, the $325,000 was split evenly and Griggs' fees only pursuant to the contingency contract with her client, Ms. Weathers.

Similarly, here, any fee recoverable by McFarland, Sr. pursuant to the contingency contract would only be computed on the portion of the "ultimate judgment or compromise settlement proceeds" received by his client, Robert Amstead, following the apportionment hearing by the trial court and its resulting order.

Although not entitled to recover fees from Laura Amstead pursuant to the contingency fee agreement, McFarland, Sr. may be entitled to recover fees from her for the period during which she was his client under the theory of quantum meruit, based on the reasonable value of any services rendered to her. *Kirschner & Venker, P.C. v. Taylor & Martino, P.C.*, supra; see *Joseph H. King, Jr., P.C. v. Lessinger*, supra.

Therefore, we vacate the trial court's order denying recoupment of attorney fees by Laura Amstead and remand this case for further proceedings consistent with this opinion.

*Judgment vacated and case remanded with directions. Barnes and Bernes, JJ., concur.*

*Broughton & Fernandez, Allen L. Broughton,* for appellant.
*McFarland & McFarland, Robert P. McFarland, Randall A. Meincke,* for appellee.