**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE:** **Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 23, 2020**

# In the Court of Appeals of Georgia

A20A0656. PARIS v. E. MICHAEL RUBERTI, LLC.

BROWN, Judge.

Eric Paris appeals from the trial court's award of damages following the entry of default judgment against him in E. Michael Ruberti, LLC's ("Ruberti") action against him to recover unpaid legal fees. Paris argues that the trial court erred in calculating and awarding damages based on breach of a contingency fee agreement when the contingency had not occurred. For the reasons that follow, we reverse in its entirety the trial court's award of damages to Ruberti and remand the case for an evidentiary hearing on damages.

"Since this appeal involves questions of law concerning the nature of damages in [Ruberti's] complaint and the trial court's entry of default judgment for liquidated damages, this Court must review the record de novo and apply a 'plain legal error'

standard of review." (Citation and punctuation omitted.) *Pure Hospitality Solutions, Inc. v. Canouse*, 347 Ga. App. 592, 594 (820 SE2d 434) (2018).

Ruberti is a law firm that previously represented Paris in a dispute with Paris' brother, concerning Paris' entitlement to money stemming from his rights and interests in a life insurance trust and "the 'Landfill Property.'" Ruberti and Paris entered into a contingency fee agreement ("the Contingency Agreement") that pertinently provides:

> 2. I understand and agree that The Firm will keep and retain as its own a sum equivalent to ten percent (10%) of the gross sums received from My Claims by means of The Firm's Services other than litigation.
>
> 3. I understand and agree that The Firm will keep and retain as its own a sum equivalent to thirty-three percent (33%) of the gross sums received through The Firm's litigation Services.
>
> . . .
>
> 10. I understand and agree that I have the absolute right to refuse any offer of settlement or any other resolution of one or both of My Claims that The Firm may propose or recommend.

According to its complaint, Ruberti successfully developed a cooperative working relationship with Paris' brother and his attorneys, allowing Ruberti to negotiate an

2

agreement for the distribution to Paris of the proceeds of an approximately $1,370,000 life insurance trust. Under the Contingency Agreement, Ruberti would be entitled to a contingency fee in the amount of $137,161. Ruberti presented the agreement to Paris on February 10, 2017. After much back and forth between Ruberti and Paris for months, Paris ultimately refused to sign the agreement.[1]

Ruberti filed the instant action against Paris, alleging fraud and breach of contract. Ruberti alleged that by refusing to sign the agreement negotiated with Paris' brother, Paris "fraudulently and in bad faith breached [the Contingency Agreement]" in an attempt "to cheat [Ruberti] out of its earned contingency fee of $137,161." Alternatively, Ruberti sought to recover under theories of quantum meruit and unjust enrichment. Ruberti also alleged that prior to entering into the Contingency Agreement, Ruberti "rendered local . . . legal services to [Paris] that were outside the scope of the work identified in [t]he [Contingency] Agreement." According to Ruberti, Paris had not paid for the "local legal services" as of the signing of the Contingency Agreement, but the parties had "orally agreed that [Paris] would not be charged for these . . . services as long as [Ruberti] recovered on one or more of the contingency fees provided for in [the Contingency Agreement]." In the complaint,

---

[1] According to the complaint, Paris would agree to sign and then renege.

3

Ruberti sought (1) $42,625 for the "local legal services" provided, (2) $439,956,[2] or alternatively $137,161, under the Contingency Agreement, (3) "an amount to be determined at trial for [Ruberti's] work and lost commissions related to the Landfill Property," (4) punitive damages, and (5) attorney fees and costs. Ruberti also sought "an amount in excess of $163,000 but not more than $200,000" under what Ruberti titled "'The Global Settlement Agreement.'"[3]

Paris timely answered the complaint, but Paris' counsel withdrew shortly thereafter. Six months later, Ruberti filed a motion for sanctions pursuant to OCGA § 9-11-55 (a), a motion for default judgment, a motion for hearing on unliquidated damages, and a motion for attorney fees and costs. Ruberti asked the trial court to

[2] Ruberti maintained that because Paris had refused to sign the negotiated agreement, Ruberti was entitled to litigate Paris' claim to the proceeds of the $1,370,000 trust, that the litigation would have been successful, and that Ruberti would have earned its contingency fee in the amount of $439,956 — 33 percent of the recovered proceeds.

[3] According to the complaint, "[Paris] proposed . . . that Ruberti represent him in seeking a global settlement resolving all of [Paris'] beneficial interests with [Paris' brother]," and Ruberti's contingency fee under this "agreement" would equal "10% of [Paris'] recovery without litigation." It is clear from the complaint that "'The Global Settlement Agreement'" was not a signed agreement, but something discussed between Paris and Ruberti around the signing of the Contingency Agreement. It is unclear from the complaint how the amount of damages stemming from "'The Global Settlement Agreement'" was calculated.

4

strike Paris' answer based on his "total failure to respond" to discovery requests. Ruberti moved the court to award it $342,836 in breach of contract damages and $48,875 in attorney fees. Ruberti stated in its brief in support of its motions that it was "entitled, without a hearing, to judgment in the amount of $342,836" based on the admitted contractual breaches in Ruberti's complaint. Ruberti further stated that it had

> (a) earned its fee of at least 10% under the [Contingency Agreement] ($137,161) by obtaining an offer of settlement[ ]; [and] (b) earned its fee of 10% under the [Global Settlement Agreement] ($163,000) by obtaining a settlement offer in an amount in excess of $3,000,000 ($3,001,610) minus the $1,371,610 offered in settlement. . . .

Ruberti requested a bench trial on damages for its fraud claim as well as punitive damages. The trial court set a hearing on Ruberti's motions for October 25, 2018. On the day of the hearing, a second attorney filed a notice of appearance for Paris along with a response to Ruberti's motions. In his response, Paris stated, inter alia, that the dispute with his brother had not been settled and that he had not recovered any money in relation to the dispute. Following the hearing, at which Paris' counsel appeared, the trial court granted Ruberti's motion for sanctions and struck Paris' answer, rendering Paris in default.

On November 7, 2018, Paris sent an email to a staff attorney for the trial court judge, communicating that he "wanted to inform the courts [that he] would be out of the country [f]rom mid November until April 2019 [for] a preplanned trip . . . [and would] be unavailable for any court proceedings." On November 19, 2018, the trial court issued an order, announcing that the court would hold a pretrial conference on February 11, 2019, and ordering the parties to file a consolidated pretrial order by February 7, 2019. Around this time, Paris' counsel withdrew due to Paris' "[f]ailure to pay the full retainer." Ruberti filed a pretrial order on February 6, but Paris failed to respond.

Ruberti again moved the trial court to enter default judgment in its favor and award it liquidated damages in the amount of $300,161. Ruberti's brief broke down the liquidated damages as follows: $137,161 under the Contingency Agreement and $163,000 under "The Global Settlement Agreement." Ruberti apparently based its calculation of the ten-percent contingency fee under "The Global Settlement Agreement" on a portion of an email sent from someone titled "The Trustee" to Paris, stating "[w]e have been trying to give you a large sum of money for almost two years this is [in] excess of I believe $3,000,000." Additionally, Ruberti asked for

$62,137.50 in attorney fees and costs without the intervention of a jury. Ruberti again asked to introduce evidence in support of its claims for fraud and punitive damages.

On February 11, 2019, the trial court entered judgment in favor of Ruberti and awarded him all requested damages, including liquidated damages in the amount of $300,161 for breach of contract and $62,137.50 in attorney fees. The court ordered a hearing to determine damages stemming from Ruberti's fraud claim as well as punitive damages. Paris emailed the trial court to say he would not be attending the hearing because he was "very sick." On March 7, 2019, the trial court held the hearing to determine unliquidated damages.

During the hearing, E. Michael Ruberti, individually, testified that Ruberti was requesting $250,000 in punitive damages stemming from its fraud claim and $690,352 in other unliquidated damages. He explained that Ruberti was entitled to 33 percent of $3,001,610 because the firm had "the right to litigate" Paris' claims, and that the $690,352 amount was calculated based on 33 percent of $3,001,610 minus the 10 percent already awarded in liquidated damages. When asked by the trial court if Paris had ever recovered any money, E. Michael Ruberti replied: "He did not as far as I know . . . I don't know what happened after he fired me." He concluded by saying that Ruberti was "relying on the complaint" and presented no further evidence. The

7

trial court orally awarded Ruberti "$690,352 for the remainder of the 33% of the recovery" plus $100,000 in punitive damages. Paris was not present at the hearing, but on the following day, filed a motion for reconsideration, asking the trial court to reconsider its February 11 order entering judgment in favor of Ruberti.[4]

On April 5, 2019, the trial court entered its "Final Judgment" in the case, awarding Ruberti $790,352 in "unliquidated damages" in addition to the $362,298.50 award of liquidated damages in the court's February 11, 2019 order. The court's judgment reflects that it awarded $100,000 in punitive damages and $690,352 in "unliquidated damages." On the same day, the trial court denied Paris' motion for reconsideration.

In his sole enumeration on appeal, Paris argues that the trial court improperly granted damages to Ruberti based on a contingency fee contract when the contingency had not occurred.[5] We agree.

[4] In his motion for reconsideration, Paris seems to ask the trial court to set aside the default judgment and open default though it is not entirely clear. Regardless, Paris does not appeal the trial court's denial of this motion.

[5] As an initial matter, we disagree with Ruberti's contention that Paris never raised this argument below and thus is barred from raising it for the first time on appeal. Paris raised the argument during the October 25, 2018 hearing and in his response to Ruberti's motion for default judgment and damages.

We first note that Paris does not challenge the trial court's grant of a default judgment on the issue of his liability. Consequently, that ruling is affirmed by operation of law. See *Canouse*, 347 Ga. App. at 594 (1). As Paris acknowledges in his brief, due to his default, he "is in a position of having admitted each and every material allegation of [Ruberti's] complaint except as to the amount of damages suffered by [Ruberti]." (Citation and punctuation omitted.) Id. And, "[d]efenses which go to the right of recovery are not available to [Paris] in default even though the same defense may also go to the assessment of damages." (Citation and punctuation omitted.) *Holland v. Tennyson*, 201 Ga. App. 125 (410 SE2d 447) (1991). However, "while the default in this case operates as an admission by [Paris] of the well-pled factual allegations in [Ruberti's] complaint . . . , it does not admit allegations not well pled, forced inferences, or conclusions of law." *ServiceMaster Co., L.P. v. Martin*, 252 Ga. App. 751, 752 (1) (556 SE2d 517) (2001). Further, "[t]he default does not preclude [Paris] from showing that under the facts as deemed admitted, no claim existed which would allow [Ruberti] to recover." Id. at 752-753 (1). See also *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 501-502 (2) (740 SE2d 413) (2013). "Our task is to determine what causes of action the well-pled facts will support." *ServiceMaster*,

9

252 Ga. App. at 754 (2). In order to do so, we must examine the law governing an attorney's ability to recover a contingency fee.

> When a fee contract exists and the matter is brought to a successful conclusion by the attorney, the contract will govern the attorney's fee. But when such a contract exists for the payment of a contingent fee, the happening of the contingency is a condition precedent to the right of the attorney to recover for his services, and the precise event which was contemplated must happen.

(Citation and punctuation omitted.) *Ellerin & Assoc. v. Brawley*, 263 Ga. App. 860, 861 (1) (589 SE2d 626) (2003). Thus, "[a]bsent express contractual provisions addressing fees in the event of termination, the discharged attorney is limited to pursuing the equitable remedy of quantum meruit, under which he can recover the reasonable attorney fees for his services that have been rendered on behalf of the client." (Citations and punctuation omitted.) *Amstead v. McFarland*, 279 Ga. App. 765, 770-771 (2) (632 SE2d 707) (2006). See also *Morrow v. Stewart*, 197 Ga. App. 689, 690 (399 SE2d 280) (1990) (attorney could recover contingency fee in action for breach of contract even if contingency had not occurred because contract explicitly provided for it). Even when the client prevents the contingency from occurring, the

10

attorney is precluded from recovering under the contract. *Ellerin*, 263 Ga. App. at 862 (2).

The relevant facts deemed admitted in Ruberti's complaint are that Ruberti and Paris entered into the Contingency Agreement whereby Ruberti would be entitled to ten percent of any money received by Paris in the dispute by means other than litigation; that Ruberti negotiated and obtained an offer to pay Paris the proceeds of a $1,370,000 trust; that Paris declined the offer; and that Paris subsequently terminated Ruberti in an effort not to pay the contingency fee. Here, the Contingency Agreement specified that the contingency fee was to be based on Paris' receipt of any gross sums recovered through Ruberti's services on Paris' claims, but neither Ruberti's complaint nor the record establishes that Paris ever received or recovered any sums for his claims. It follows from these facts that the contingency did not occur before Paris terminated Ruberti's services.

Even if Paris prevented the contingency from occurring to avoid paying the contingency fee as Ruberti's complaint alleges, Ruberti is precluded from recovering under the contingency contract. See *Ellerin*, 263 Ga. App. at 862 (2). Put another way, the well-pled facts in Ruberti's complaint cannot support a claim for breach of

11

contract and an award of damages in the amount of the contingency fee.[6] Cf. *Grand v. Hope*, 274 Ga. App. 626, 629-630 (1) (617 SE2d 593) (2005) (reversing award of damages following default judgment because "[i]mplicit in [the plaintiff's] lawsuit [was] an unsupported legal theory or conclusion of law" and the plaintiff was "trying to obtain damages for which there is no basis in law"); *ServiceMaster*, 252 Ga. App. at 754-755 (2) (reversing award of damages because default did not preclude defendant from showing that, under facts deemed admitted, no claim by which plaintiff could recover in tort). The same reasoning applies to Ruberti's allegations regarding its ten-percent contingency fee under "The Global Settlement Agreement."[7]

---

[6] Ruberti argues that even if it cannot recover damages for breach of contract because the contingency did not occur, it nonetheless has shown a breach of the implied covenant of good faith and fair dealing, which would support the award of breach of contract damages. However, "the [implied] covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." (Citation and punctuation omitted.) *Ceasar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 533 (2) (c) (744 SE2d 369) (2013). See also *U.S. Bank, N.A. v. Phillips*, 318 Ga. App. 819, 825 (2) (734 SE2d 799) (2012).

[7] As earlier noted, Ruberti's allegation that he earned the ten-percent contingency fee under "The Global Settlement Agreement" by "obtain[ing] a settlement offer in an amount in excess of $3,000,000" appears to be based solely upon a portion of an email to Paris from an unknown sender, stating that that person had been trying to give Paris money in an amount in excess of $3,000,000, according to that unknown sender's belief. It also appears from the hearing transcript that Ruberti's calculation of unliquidated damages was based on this email. "Thus, [Ruberti] did not establish with certainty the amount of the obligation as the law

12

Similarly, to the extent that the trial court's award of unliquidated damages, including punitive damages, is based on the 33-percent contingency fee because Ruberti averred in the complaint that it was entitled to litigate Paris' claims without Paris' permission, it was also erroneous.[8]

The well-pled facts deemed admitted in Ruberti's complaint could, however, support a claim and recovery in quantum meruit. See *Amstead*, supra, 279 Ga. App. at 770-771 (2). "Where quantum meruit is applicable, the provider may recover the reasonable value of goods or services transferred, but value is defined in terms of value to the recipient." *Ellerin*, 263 Ga. App. at 863 (2). "Under a quantum meruit claim, an attorney is entitled to have his fees valued both in light of the amount of work he has done, and also by the results accomplished." (Citation and punctuation omitted.) *Lewis v. Smith*, 274 Ga. App. 528, 531 (2) (618 SE2d 32) (2005).

---

requires. The fact of the default alone did not convert the damages into a liquidated claim. The conclusory allegations of the amount owed were not sufficient to render the damages liquidated." (Citation and punctuation omitted.) *Mitchell v. GilWil Group, Inc.*, 261 Ga. App. 882, 886 (2) (583 SE2d 911) (2003).

[8] This is especially true given that Ruberti did not aver in its complaint that it ever litigated any of Paris' claims. This reasoning applies whether the trial court awarded these damages based on Ruberti's fraud or breach of contract claim. See, e.g., *TechBios, Inc. v. Champagne*, 301 Ga. App. 592, 594 (1) (688 SE2d 378) (2009) ("actionable fraud cannot be predicated on a promise contained in a contract").

Accordingly, in assessing the amount of damages due under a quantum meruit claim, "the trial court must determine whether [the client] received any benefit from [the attorney's] services, and if so, the value of those services rendered and received." Id. at 531-532 (2).

> Proof of the reasonable value of the attorney's services is required and this is a question for the trier of fact. This measure of damages does not fall within the definition of liquidated damages as an amount certain and fixed, either by the act and agreement of the parties, or by operation of law; a sum which cannot be changed by the proof; it is so much or nothing.

(Citations and punctuation omitted.) *William H. Stoll, LLC v. Scarber*, 287 Ga. App. 672, 674 (2) (652 SE2d 834) (2007). See also *Davis v. Carpenter*, 155 Ga. App. 301, 303 (2) (270 SE2d 810) (1980) ("damages awarded pursuant to a claim based on quantum meruit are considered to be unliquidated damages"), rev'd on other grounds, *Davis v. Carpenter*, 247 Ga. 156 (274 SE2d 567) (1981). It follows that the amount of damages Ruberti may be entitled to in quantum meruit must be determined by the trial court following an evidentiary hearing. See *Scarber*, 287 Ga. App. at 674 (2) (affirming trial court's denial of default judgment on attorney's claim for legal fees under quantum meruit because such a claim is not one involving liquidated damages).

14

Accordingly, we reverse the trial court's award of liquidated and unliquidated damages and remand the case for an evidentiary hearing on the appropriate amount of damages.[9]

*Judgment reversed and case remanded with direction. Dillard, P. J., and Rickman, J., concur.*

---

[9] To be clear, the only viable claim supported by Ruberti's complaint sounds in quantum meruit, which cannot support an award of punitive damages. See *Layer v. Clipper Petroleum, Inc.*, 319 Ga. App. 410, 420 (8) (735 SE2d 65) (2012).