**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 5, 2021**

# In the Court of Appeals of Georgia

A20A1701. JACKSON et al. v. JONES.

BROWN, Judge.

Lanette Yvonne Crumpton[1] sued attorney Terry D. Jackson and his law office (collectively, "Jackson") for conversion and punitive damages based upon Jackson's retention of a contingency fee following his settlement of a claim for the wrongful death of Crumpton's son. Crumpton maintains that she did not have an attorney-client relationship with Jackson; he argues that she was bound by a contingency fee agreement executed by her ex-husband, David Jones, pursuant to OCGA § 19-7-1 (c) (2) (C), which governs the rights of unmarried parents to pursue a claim for the

---

[1] When Crumpton filed suit, her name was Lanette Yvonne Jones, but she subsequently remarried. To distinguish her from her ex-husband, we will use her current last name.

wrongful death of their child. The trial court denied Jackson's motion for summary judgment, and he appeals.[2] For reasons that follow, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from the grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Timmons v. SunTrust Bank*, 352 Ga. App. 175 (834 SE2d 298) (2019).

In this case, the relevant facts are not disputed. In December 2014, Michael Jones, the adult son of Crumpton and Jones, was killed in an automobile collision. At the time, Crumpton and Jones were separated.[3] Jones contacted Jackson regarding a wrongful death suit, and Jackson agreed to represent him and to advance funds for Michael's burial and funeral expenses. On December 18, 2014, Jones entered into a contingency fee agreement with Jackson for the claims arising from Michael's death. The agreement identified both Jones and Crumpton as "Clients" and provided that

---

[2] We granted Jackson's application for interlocutory review.

[3] They have since divorced.

2

Jackson would prosecute their claims arising out of Michael's automobile accident in exchange for an attorney fee of forty percent of any gross recovery.[4] The agreement was signed by Jones and Jackson and contained a space for Crumpton's signature.

The same day Jones signed the agreement, Jackson called Crumpton to discuss his representation. Jackson told Crumpton that she would share equally in any recovery, explained that he needed some documents from her, and asked her to come to his office to sign the contingency fee agreement. At Crumpton's request, Jackson agreed to meet with her separately from Jones, and Crumpton offered to come to Jackson's office the following Monday. Jackson concluded the conversation by telling Crumpton he "look[ed] forward to representing [her]," and Crumpton responded, "All right. Thank you."

Crumpton never went to Jackson's law office. On December 20, 2014, Jackson called Crumpton again, but she did not answer. Jackson left a voice mail asking Crumpton to call him to arrange a time to "get this stuff executed for your son's case,

---

[4] The agreement provided, in relevant part: "This agreement is entered into in consideration of legal services rendered and to be rendered by [Jackson] in any legal claims that David Jones and Lanette [Crumpton], as the sole heirs of decedent Michael Jones, ("Clients") may have against responsible parties for the events arising out of [the] motor vehicle collision. . . . Clients employ and hereby agree to pay to [Jackson], a fee based on forty percent (40%) of any 'gross recovery' received by trial, judgment, or settlement of the claims[.]"

3

so we can get moving on that."[5] Crumpton did not return the call, and she never signed the contingency fee agreement. She never informed Jackson that she had, or wanted, separate counsel to represent her in claims related to Michael's death, and nothing in the record indicates that she ever obtained such counsel.

Jackson continued to work on the case, with no participation by Crumpton. In February 2015, the liability carrier for the driver responsible for Michael's death tendered the policy limit of $25,000, and the following month, the insurance carrier who provided Michael's insured/underinsured motorist coverage tendered the policy limit of $200,000. Jackson collected the proceeds, retained forty percent ($90,000) as his contingency fee, and disbursed the remainder — minus funds he had advanced for Michael's funeral expenses — to Jones' divorce lawyer for distribution to Jones and Crumpton. In connection with the divorce proceedings, Jones and Crumpton agreed to the disbursement of the funds between them.

Crumpton then sued Jackson for conversion, claiming that "[s]ince [she] was not [his] client or a party to the [contingency fee] agreement, [he was] not entitled to any contingency fees arising from her portion of the settlement." Crumpton sought

---

[5] Crumpton claims that she does not recall receiving a second telephone call or voice mail from Jackson. Jackson, however, retained a recording of the voice mail.

an award of $45,000 — her half of the retained contingency fee — plus punitive damages and attorney fees. Jackson answered, denying that Crumpton was entitled to any relief and, in the alternative, counterclaiming for the value of his services under quantum meruit and other legal theories. The parties filed cross-motions for summary judgment. In her motion, Crumpton argued that Jackson was not entitled to retain any contingency fee from her portion of the settlement proceeds because she was not his client and had not signed the contingency fee agreement. She also argued that Jackson could not recover under a theory of quantum meruit because he had failed to keep records of the time he worked on the case. In his motion, Jackson argued that Jones could, and did, bind Crumpton to the contingency fee agreement pursuant to OCGA § 19-7-1 (c) (2) (C).[6]

Following a hearing, the trial court entered an order denying both motions. The court found that there were genuine issues of material fact as to whether Crumpton had refused to proceed in the wrongful death claim, thereby authorizing Jones to contract for legal representation on her behalf under OCGA § 19-7-1 (c) (2) (C) and

[6] Jackson also argued that Crumpton was collaterally estopped from denying her obligation for half of his contingency fee based on a settlement she reached with Jones in the divorce action. Jackson, however, does not make this argument on appeal.

5

whether Jones had actually exercised such authority. If not, the trial court found issues of fact as to the amount of fees to which Jackson may have been entitled, presumably under a theory of quantum meruit. On appeal, Jackson argues that he is entitled to judgment as a matter of law under OCGA § 19-7-1 (c) (2) (C).[7]

Under Georgia law, parents have a right to recover for the life of a child who dies as the result of negligence and has no other direct heirs (i.e., a spouse or child.) OCGA § 19-7-1 (c) (2).[8] See also *Baker v. Sweat*, 281 Ga. App. 863, 866 (1) (637 SE2d 474) (2006). Where, as here, both parents of the deceased child are living but are divorced, separated, or living apart,

> the right [of recovery] shall be in both parents. However, if the parents are divorced, separated, or living apart and one parent refuses to proceed or cannot be located to proceed to recover for the wrongful death of a child, the other parent shall have the right to contract for representation on behalf of both parents, thereby binding both parents, and the right to

---

[7] Jackson does not address his quantum meruit counterclaim on appeal.

[8] Effective January 1, 2020, the legislature amended OCGA § 19-7-1 (c) (1) related to the right of recovery for the homicide of an unborn child. See H. B. 481, Act 234, Ga. L. 2019, § 6. The United States District Court for the Northern District of Georgia recently ruled that H. B. 481 is unconstitutional. See *SisterSong Women of Color Reproductive Justice Collective v. Kemp*, __ FSupp.3d __ (Case No. 1:19-CV-02973-SCJ) (N.D. Ga. July 13, 2020). That ruling does not affect our decision here, as this case does not involve an unborn child.

proceed on behalf of both parents to recover for the homicide of the child with any ultimate recovery to be shared by the parents as provided in this subsection.

OCGA § 19-7-1 (c) (2) (C).

Jackson argues that Crumpton "refuse[d] to [proceed]," within the meaning of the statute, by failing to attend her planned meeting with him, not responding to his subsequent phone call, and not participating in the prosecution of the claim; and that Jones exercised his authority to bind her to the contingency fee agreement. Crumpton does not dispute that she refused to proceed, but denies that Jones intended to, or did, bind her to the contingency fee agreement. We find that the undisputed evidence shows otherwise.

Although there is no direct evidence in the record about Jones' intent,[9] there is circumstantial evidence that Jones, Crumpton, and Jackson all agreed that Jackson would represent Crumpton. During Jackson's phone call with Crumpton, he said that Jones had told him Crumpton would be expecting the call, suggesting that Jones and Crumpton had previously discussed Jackson's representation. During the call, Crumpton said she would come to Jackson's office to execute the contingency fee

---

[9] Jones apparently was not deposed and did not submit an affidavit.

agreement, and she thanked Jackson when he said he was looking forward to representing her. The contingency fee agreement provided that Jackson would represent both Jones and Crumpton, and it contained blank spaces for both to sign. Crumpton never communicated that she did not want Jackson to represent her. Compare *Amstead v. McFarland*, 279 Ga. App. 765, 770-771 (2) (632 SE2d 707) (2006) (mother was entitled to recoup fees retained by attorney who prosecuted claim for wrongful death of her son because she had formally discharged the attorney, who proceeded to represent only her ex-husband). And Crumpton did not hire counsel of her own to pursue the wrongful death claim. Compare *Weathers v. City of Hinesville*, 260 Ga. App. 6, 8 (578 SE2d 477) (2003) (where divorced parents each hired separate counsel to pursue claim for wrongful death of their son, mother's attorney "was only entitled to recover her fees based on the overall settlement proceeds that she was able to procure for *her* client") (emphasis in original).

Crumpton cites *Rhone v. Bolden*, 270 Ga. App. 712 (608 SE2d 22) (2004), to support her assertion that Jones did not intend to contract on her behalf. In *Rhone*, after an adult child of unmarried parents died, the decedent's mother and brother brought and settled a wrongful death claim. Id. at 712. The father then sued the wrongful death attorneys for legal malpractice and other claims. Id. We ruled that the

8

attorneys were entitled to summary judgment because they had no attorney-client relationship with the father. Id. at 716-719 (4). We noted that the father had neither sought nor received any legal advice from the attorneys and, in fact, had never even spoken to them. Id. at 716 (4) (a). Accordingly, we concluded that under these circumstances, there was "no indication . . . that [the mother] contracted for the attorneys to represent [the father's] interest." Id. at 717 (4) (b). In this case, Crumpton did speak to Jackson and verbally agreed to come to his office to sign the contingency fee agreement, which provided that Jackson represented both parents. Thus, *Rhone* is factually distinguishable.

Crumpton also argues that Jackson could not have represented her because he took actions adverse to her by advancing Jones money from the future settlement and paying money directly to Jones' divorce attorney. However, Jackson also advanced money for Michael's funeral expenses, which benefitted both parents equally, and nothing in the record indicates that Crumpton requested any other advances. Further, Jackson told Crumpton over the phone that she was entitled to share equally in any recovery. Crumpton points to no evidence that Jackson tried to deprive her of her rightful portion of the net proceeds.

Finally, Crumpton contends that because contingency fee agreements must be strictly construed,[10] the agreement in question did not bind her because she did not sign it and was not Jackson's client. Again, however, Jones was entitled to bind Crumpton to the agreement under OCGA § 19-7-1 (c) (2) (C) in light of her refusal to proceed, and Crumpton's own conduct indicated an intent to be so bound.

In sum, we conclude that the trial court erred by denying Jackson's motion for summary judgment.

*Judgment reversed. Dillard, P. J., and Markle, J., concur.*

---

[10] See *Ellerin & Assoc. v. Brawley*, 263 Ga. App. 860, 861 (1) (589 SE2d 626) (2003) ("Counsel must be held to the strict language of the instrument counsel prepared.") (citation and punctuation omitted).